## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

DEBORAH THERIOT                                    CIVIL ACTION

VERSUS                                                No. 18-10250

BUILDING TRADES UNITED
PENSION TRUST FUND                                   SECTION I

### ORDER & REASONS

Before the Court is a motion to dismiss filed by defendant The Building Trades United Pension Trust Fund (the "Pension Fund").[1] Also made defendant is the Pension Fund's Board of Trustees (the "Board of Trustees").[2] The Pension Fund

---

[1] R. Doc. No. 10.

[2] The motion to dismiss was filed on March 19, 2019 by the Pension Fund. In its motion, the Pension Fund moved to dismiss count III of plaintiff Deborah Theriot's amended complaint, which alleges that the Pension Fund failed to produce requested documents in violation of 29 U.S.C. § 1132(c). R. Doc. No. 4, at ¶¶ 28–29. The Pension Fund moved to dismiss that claim, arguing that it is not the administrator of the pension plan ("the Plan") at issue and, therefore, not the proper defendant. R. Doc. No. 10-1, at 12. In her opposition to the motion, Theriot asserted that the Pension Fund failed to articulate why it was an improper defendant and failed to provide the identity of the proper defendant. R. Doc. No. 20, at 23. However, Theriot conceded that the claim could also be asserted against the Board of Trustees as administrator of the Plan. *Id.* Thereafter, on May 16, 2019, Theriot moved for leave to file a second amended complaint to add the Board of Trustees as a defendant with respect to counts III and IV. R. Doc. No. 30. The Pension Fund opposed the motion only insofar as it argued that the motion was futile if this Court determined that Theriot did not have standing to bring this lawsuit. R. Doc. No. 35, at 1 ("The Pension Fund does not oppose the proposed amendment if the motion to dismiss is denied.").

At a June 21, 2019 telephone conference, the Court asked the parties to confirm whether the Board of Trustees was the proper defendant as to count III and whether the Pension Fund should be dismissed as to count III. The Court did not receive a clear answer as to who was the proper defendant, but the parties agreed that the Board of Trustees should be added as a defendant with respect to count III. The Court then granted Theriot's motion for leave to file a second amended complaint. R. Doc.

moves to dismiss plaintiff Deborah Theriot's ("Theriot") claims against it brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). Theriot asserts her claims in her capacity as the court-appointed independent administrator of the Succession of Audrey L. Hamann.[3] Theriot filed a response in opposition to the Pension Fund's motion,[4] and the Pension Fund filed a reply.[5] The parties also submitted supplemental briefing[6] pursuant to this Court's order.[7]

The Pension Fund filed its motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting in part that Theriot failed to state a claim upon which relief can be granted.[8] Specifically, the Pension Fund argues that Theriot does not have standing under ERISA to assert her claims and that she has failed to exhaust available administrative procedures.[9] The Pension Fund also argues, pursuant to Rule 12(b)(3), that this district is not the proper venue for Theriot's

---

No. 43; *see generally* R. Doc. No. 44. Because the Board of Trustees was made a defendant with respect to count III, the Pension Fund has failed to articulate why it (the Pension Fund) is not a proper defendant with respect to count III, and the Pension Fund has failed to assert any other basis for dismissal of count III, the Court will not dismiss that claim at this time.

[3] R. Doc. No. 44, at 1. Initially, Theriot also asserted her claims in her individual capacity, but at a May 29, 2019 status conference, Theriot stated that she was no longer asserting claims in her individual capacity. R. Doc. No. 37.

[4] R. Doc. No. 20.

[5] R. Doc. No. 26.

[6] R. Doc. Nos. 45, 46 & 50.

[7] R. Doc. No. 43.

[8] *See* R. Doc. No. 10.

[9] R. Doc. No. 10-1, at 1

lawsuit.[10] For the following reasons, the motion is granted in part and denied in part, as stated herein.

## I.

The Court must first address the issue of standing. Along with its motion, the Pension Fund attached a number of exhibits that Theriot references in her complaint. At a May 29, 2019 status conference, the parties agreed that the Court may look beyond the pleadings and consider the exhibits when considering the motion.[11] Theriot also attached exhibits in response to the motion to dismiss.[12]

## A.

The Court finds that the following facts related to Theriot's standing under ERISA are undisputed:

Robert A. Hamann ("Mr. Hamann") participated in a pension plan ("the Plan") sponsored and underwritten by the Pension Fund and administered through the Board of Trustees.[13] Mr. Hamann died on December 30, 2016, and his wife, Audrey L. Hamann ("Mrs. Hamann") became entitled to post-retirement survival benefits by the express terms of the Plan.[14]

On January 11, 2017, Mrs. Hamann submitted her application for the post-retirement survivor benefit to the Pension Fund.[15] The application form allows the

---

[10] R. Doc. No. 10-1, at 13.
[11] R. Doc. No. 37, at 1.
[12] *See* R. Doc. Nos. 20-1–20-6.
[13] R. Doc. No. 44, at ¶¶ 2 & 4; R. Doc. No. 10-1, at 2.
[14] R. Doc. No. 44, at ¶ 4; R. Doc. No. 10-1, at 2.
[15] R. Doc. No. 44, at ¶ 5; R. Doc. No. 10-1, at 2.

applicant to choose how she will receive her benefits: as a monthly annuity or as a lump sum equivalent.[16] The benefit illustration sheet explains:

> You, the survivor, may instead elect to receive the benefit as an actuarially equivalent lump sum. If you initially elect a monthly benefit payment, you may elect at any time in the future to receive the remainder of the Post-Retirement Survivor benefit as a lump sum.[17]

Mrs. Hamann elected to receive her benefits under the monthly annuity option.[18]

In a letter dated March 1, 2017, Mrs. Hamann received notice that her application for survivor benefits had been approved and that she would receive monthly payments of $693.63.[19] The letter also advised Mrs. Hamann that she could elect to receive her benefits in a lump sum "at any time in the future."[20] That same month, the Pension Fund mailed Mrs. Hamann a change form whereby she could convert her monthly benefits into a lump sum payment.[21] The Pension Fund instructed Mrs. Hamann to return the change form "by April 5, 2017 to receive the payment on May 1, 2017."[22] Mrs. Hamann completed and returned the change form, which the Pension Fund received on April 4, 2017.[23] Mrs. Hamann unfortunately passed away on April 5, 2017.[24]

---

[16] R. Doc. No. 44, at ¶ 5; *see* R. Doc. Nos. 10-3 & 10-5.
[17] R. Doc. No. 44, at ¶ 5; R. Doc. No. 10-3.
[18] R. Doc. No. 44, at ¶ 5; R. Doc. No. 10-1, at 2 (citing R. Doc. No. 10-5).
[19] R. Doc. No. 44, at ¶ 6; R. Doc. No. 20-2, at 2.
[20] R. Doc. No. 44, at ¶ 6; R. Doc. No. 20-2, at 1–2.
[21] R. Doc. No. 44, at ¶ 7; R. Doc. No. 10-1, at 3; R. Doc. No. 10-6.
[22] R. Doc. No. 10-6, at 1.
[23] R. Doc. No. 44, at ¶ 7; R. Doc. No. 10-1, at 3; R. Doc. No. 10-6.
[24] R. Doc. No. 44, at ¶ 7; R. Doc. No. 10-1, at 3.

After Mrs. Hamann's death, her daughter, Theriot, inquired about the lump sum payment.[25] The Pension Fund sent Theriot a letter dated April 18, 2017 explaining that she was not entitled to the lump sum payment:

> Plan documents state that the Joint and Survivor benefit is payable for the survivor's lifetime. Therefore[,] the payment dated April 1, 2017 was the final payment Mrs. Hamann was eligible to receive from this Fund. The paperwork Mrs. Hamann submitted for a Lump Sum payment was for May 1, 2017 and would not be payable due to the fact that she was not living at that time.[26]

## B.

The U.S. Fifth Circuit Court of Appeals has "recognized that standing is essential to the exercise of jurisdiction and is a 'threshold question . . . [that] determin[es] the power of the court to entertain the suit.'" *Coleman v. Champion Int'l Corp./Champion Forest Prods.*, 992 F.2d 530, 532 (5th Cir. 1993) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

Although the Pension Fund filed its motion pursuant to Rule 12(b)(6), the standing inquiry is more appropriately considered under Rule 12(b)(1). The Pension Fund's "argument that [Theriot] lacks standing to bring suit under ERISA is properly considered as a jurisdictional attack under Rule 12(b)(1)." *Feingerts v. Feingerts*, No. 15-2895, 2016 WL 2744812, at *7 (E.D. La. May 10, 2016) (citing *Piro v. Nexstar Broad, Inc.*, No. 11-2049, 2012 WL 2089596, at *3 (W.D. La. Apr. 10, 2012); *Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006); *see also Lee v. Verizon Comms., Inc.*,

---

[25] R. Doc. No. 44, at ¶¶ 4 & 8.
[26] R. Doc. No. 44, at ¶ 9; R. Doc. No. 10-1, at 3; R. Doc. No. 10-7.

837 F.3d 523, 533 (5th Cir. 2016) ("As a matter of subject matter jurisdiction, standing under ERISA § 502(a) is subject to challenge through Rule 12(b)(1)."); *Mem'l Hermann Health Sys. v. Pennwell Corp. Med. & Vision Plan*, No. H-17-2364, 2017 WL 6561165, at *4 (S.D. Tex. Dec. 22, 2017) (recognizing that the Fifth Circuit treats standing under ERISA as a jurisdictional matter and applying Rule 12(b)(1)); *James v. La. Laborers Health & Welfare Fund*, 766 F. Supp. 530, 531 (E.D. La. 1991) (Feldman, J.) (considering whether the plaintiff had standing under ERISA in response to a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)).

Pursuant to Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.*

When applying Rule 12(b)(1), a court may dismiss an action for lack of subject matter jurisdiction "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Spotts v. United States*, 613 F.3d 559, 565–66 (5th Cir. 2010).

"When subject matter jurisdiction is challenged, the Court first considers whether the defendant has made a 'facial' or a 'factual' attack upon the complaint." *Magee v. Winn-Dixie Stores, Inc.*, No. 17-8063, 2018 WL 501525, at *2 (E.D. La. Jan. 22, 2018) (Vance, J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). "A motion to dismiss for lack of standing is factual rather than facial if the defendant submits affidavits, testimony, or other evidentiary materials." *Id.* (internal quotation marks omitted) (quoting *Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015)). "When a defendant makes a factual attack on the complaint, the plaintiff is 'required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction.'" *Id.* (quoting *Paterson*, 644 F.2d at 523). "In the case of a facial attack, the court 'is required to look to the sufficiency of the allegations in the complaint because they are presumed to be true.'" *Id.* (quoting *Paterson*, 644 F.2d at 523). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161 (quoting *Home Builders Ass'n*, 143 F.3d at 1010).

## C.

Standing under ERISA, pursuant to 29 U.S.C. § 1132(a), is limited to participants, beneficiaries, and fiduciaries. *Coleman*, 992 F.2d at 533.[27] The Fifth Circuit strictly construes the class of claimants enumerated in § 1132(a). *Cobb*, 461

---

[27] It is undisputed that Mrs. Hamann was neither a participant nor a fiduciary.

F.2d at 635; *Coleman*, 992 F.2d at 534 ("[O]ur previous decisions have hewed to a literal construction of § 1132(a).").[28]

A beneficiary is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). "In order to qualify as a beneficiary, an individual must have a 'reasonable or colorable claim to benefits.'" *Feingerts*, 2016 WL 2744812, at *7 (quoting *Crawford v. Roane*, 53 F.3d 750, 754 (6th Cir. 1995)); *see also Cobb*, 461 F.3d at 635–36 (holding that, to have standing as a beneficiary under ERISA, a plaintiff must show a designation of beneficiary status by a participant or the terms of the plan and a colorable entitlement to benefits).

Theriot argues that as administrator of Mrs. Hamann's estate, she has standing to bring these claims on Mrs. Hamann's behalf. Specifically, Theriot asserts that she has derivative standing.[29] The Fifth Circuit recognizes both independent standing and derivative standing under ERISA. *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1287–89 (5th Cir. 1988), *overruled on other grounds by Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.*, 698 F.3d 229 (5th Cir. 2012) (mem.)). A party has independent standing when he or she is an enumerated party under § 1132(a). *Id.* "But one who lacks the narrow status of a participant or

---

[28] "Because '[w]here Congress has defined the parties who may bring a civil action founded on ERISA, we are loathe [*sic*] to ignore the legislature's specificity,' standing to bring an action founded on ERISA is a 'jurisdictional' matter." *Cobb*, 461 F.3d at 634–35 (alterations in original) (quoting *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1288–89 (5th Cir. 1988), *overruled on other grounds by Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.*, 698 F.3d 229 (5th Cir. 2012) (mem.)).

[29] R. Doc. No. 20, at 8.

beneficiary may nevertheless sue derivatively on behalf of a participant or beneficiary." *James*, 766 F. Supp. at 532 (discussing *Hermann* and finding that a succession representative could sue derivatively on behalf of the deceased).

"The Pension Fund does not dispute that provided Theriot is the administrator of Mrs. Hamann's estate, she would have standing under ERISA if Mrs. Hamann's estate is entitled to benefits from the Pension Fund."[30] Therefore, the Pension Fund asserts that this Court must determine whether Mrs. Hamann's estate is entitled to benefits under the Plan—*i.e.*, whether it has a colorable claim to the benefits—to determine whether Theriot has standing.[31]

Theriot argues that it would be inappropriate for the Court to resolve the merits of the underlying benefits claim to determine her standing.[32] However, the Fifth Circuit allows such an inquiry:

> Although it may not be advisable to interpret the terms of the plan at this jurisdictional stage, [the Court is] bound to do so by *Coleman*, which interpreted the term "payable" under the plan to determine whether the descendant and heir of the plan participant qualified as a beneficiary. Further, the definition of "beneficiary" directs the courts to look to the terms of the plan at the jurisdictional stage to decide whether the terms "designate" a plaintiff as a beneficiary or whether they provide plaintiff with a colorable claim for benefits.

*Cobb*, 461 F.3d at 637.

---

[30] R. Doc. No. 26, at 2.
[31] R. Doc. No. 26, at 3.
[32] R. Doc. No. 20, at 10.

The parties do not dispute that Mrs. Hamann was a beneficiary of Mr. Hamann's Joint and Survivor benefits while she was alive. Rather, the Pension Fund argues that Mrs. Hamann's estate is not a beneficiary entitled to the lump sum payment because the benefits were no longer payable when she died.[33]

Article VIII Section 1(a) of the Plan, which provides for Joint and Survivor and Optional Forms of Benefit, states:

> (1) [I]n the event of [the participant's] death after his Retirement, two-thirds of such reduced monthly Benefit shall continue to be paid to the Participant's Surviving Spouse *for life* . . . .

> (4) With respect to a Participant whose Surviving Spouse is eligible for a Benefit under this subsection (a), the Participant's Surviving Spouse may request, in writing, to receive a lump sum payment *at any time* which is the Actuarial Equivalent of the Benefits payable under this subsection (a), in lieu of such Benefits.[34]

Mrs. Hamann initially received her benefits in the form of a monthly annuity, but she later elected to receive the benefits as a lump sum. The Pension Fund advised Mrs. Hamann that, if she wished to receive the lump sum payment, she should complete and return the change form "by April 5, 2017 to receive the payment on May 1, 2017."[35] The Pension Fund also advised Mrs. Hamann that the lump sum benefit would be $64,825.10 as of May 1, 2017. Mrs. Hamann completed the change form, indicating that she "wish[ed] to receive the remainder of the benefits payable to [her]

---

[33] R. Doc. No. 10-1, at 7.
[34] R. Doc. Nos. 10-4 & 20-1, at 63 (emphasis added).
[35] R. Doc. No. 10-6, at 1.

in a lump sum," and the Pension Fund received the change form before her death.[36] Theriot contends that, because the Plan's provision, copied above, allowed Mrs. Hamann to elect to receive the lump sum "at any time," and because she did so before her death, Mrs. Hamann's estate is entitled to the benefits.[37]

The Court finds that the phrase "at any time" refers to the time at which the surviving spouse may request receipt of a lump sum. The Plan allows the surviving spouse to elect a lump sum at any time after the election of monthly benefits. This interpretation is made clear by the benefit illustration sheet that Theriot cites in her second amended complaint, which explains: "If you initially elect a monthly benefit payment, you may *elect at any time in the future* to receive the remainder of the Post-Retirement Survivor benefit as a lump sum."[38] But the inquiry does not end there.

The Plan's provisions do not contain any language referencing the change form's effective date or the date on which the benefits would convert from monthly payments to the lump sum. Neither Theriot nor the Pension Fund has directed the Court to any language in the Plan or any other documents that reference the effective date or conversion date for the change form.

The Plan provides that, if and when the surviving spouse elects to receive the benefits as a lump sum, the surviving spouse will receive the actuarial equivalent of the benefits payable.[39] As previously mentioned, the Pension Fund informed Mrs.

---

[36] R. Doc. No. 10-6, at 1.
[37] R. Doc. No. 44, at ¶ 19.
[38] R. Doc. No. 10-3 (emphasis added).
[39] "Actuarial equivalent" is defined by the Plan as "a Benefit having the same value as the Benefit it replaces . . . ." R. Doc. No. 10-4, at 1; R. Doc. No. 20-1, at 27.

Hamann that, if it received her change form by April 5, 2017, she would receive her lump sum benefit of $64,825.10—to replace her monthly benefit—on May 1, 2017. The Pension Fund received Mrs. Hamann's change form on April 4, 2017 when the benefits were clearly payable.

Furthermore, the Plan clearly provides that the surviving spouse shall receive the participant's reduced monthly benefits for life. There is no dispute that Mrs. Hamann was alive when she elected to receive the lump sum of her remaining benefits and that she was alive when the Pension Fund received her change form. While the Pension Fund advised Mrs. Hamann that she would receive the lump sum on May 1, 2017, nothing in the Plan, the benefit illustration sheet, or the Pension Fund's correspondence with Mrs. Hamann suggests that her election would become invalid or that she would no longer be entitled to the lump sum payment if she died before May 1, 2017.

The Pension Fund has been unable to adequately explain why Mrs. Hamann did not become entitled to the lump sum—the remainder of her benefits—before her death. At this jurisdictional stage, the Court finds that Theriot, on behalf of Mrs. Hamann's estate, had a reasonable or colorable claim entitling the estate to benefits. Therefore, Theriot, on behalf of Mrs. Hamann's estate, has standing to assert her claims.

## II.

The Pension Fund also argues that venue is improper in the Eastern District of Louisiana.[40] Rule 12(b)(3) of the Federal Rules of Civil Procedure authorizes a defendant to move for dismissal due to improper venue. "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "The burden is on the plaintiff to establish that his chosen district is a proper venue." *Stewart v. Marathon Petroleum Co. LP*, No. 17-7775, 2018 WL 4352825, at *2 (E.D. La. Sept. 12, 2018) (Africk, J) (citations omitted). "[T]he Court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007).

Pursuant to ERISA, 29 U.S.C. § 1132(e)(2), an action "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found . . . ." The Pension Fund asserts that the Pension Fund resides in, is administered in, and is maintained in the Eastern District of Wisconsin.[41] The Pension Fund asserts that the only basis for venue in the Eastern District of Louisiana is if the breach occurred in this district.[42] The parties do not dispute that the alleged breach was the Pension Fund's denial of the lump sum payment to Mrs. Hamann's estate.

---

[40] R. Doc. No. 10-1, at 13; R. Doc. No. 26, at 10.
[41] R. Doc. No. 10-1, at 14.
[42] R. Doc. No. 10-1, at 14.

To answer the question of where the breach took place, the Pension Fund relies on *Orgeron v. Moran Towing Corp.*, No. 93-4164, 1994 WL 462995 (E.D. La. Aug. 22, 1994). The plaintiff in *Orgeron* had applied for, but was denied, long-term disability benefits. 1994 WL 462995, at *1. The district court held that the breach did not occur in Louisiana and that venue was improper in the Eastern District of Louisiana because the plaintiff never received long-term disability benefits in Louisiana. *Id.* at *1–2. The court in *Orgeron* relied on *Brown Schools, Inc. v. Florida Power Corp.*, 806 F. Supp. 146 (W.D. Tex. 1992), which "distinguished alleged breaches involving payments which had been made to a beneficiary within the district and then ceased, from alleged breaches in which payments were simply denied, with no transactions taking place within the district at all . . . ." *Orgeron*, 1994 WL 462995, at *2. In *Orgeron*, no payments had been made in the Eastern District at all. *Id.*

The Pension Fund argues that Mrs. Hamann never received the type of benefit at issue in this litigation—the lump sum survivor benefit—in the Eastern District of Louisiana. Specifically, the Pension Fund argues, without providing any legal support, that the lump sum survivor benefit is a different benefit than the monthly survivor benefits Mrs. Hamann had been receiving.[43]

Finding there to be no dispute between the parties that the breach at issue was the denial of the lump sum payment of Mrs. Hamann's survivor benefits to Mrs. Hamann's estate, and that there is no dispute that Mrs. Hamann was receiving said survivor benefits in monthly payments and residing in the Eastern District of

---

[43] R. Doc. No. 10-1, at 14; R. Doc. No. 26, at 11.

Louisiana when she died, the Court finds that the benefits at issue were received in this district and that venue is proper. *See French v. Dade Behring Life Ins. Plan*, No. 09-394, 2010 WL 2360457, at *2 (M.D. La. Mar. 23, 2010) ("While not yet addressed by the Fifth Circuit, several district courts within this circuit have either held or assumed that ERISA venue is proper where a plan participant/beneficiary receives or was to receive benefits.").

## III.

Finally, the Pension Fund argues that counts I, II, IV, and V of Theriot's second amended complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to exhaust administrative remedies.

Pursuant to Rule 12(b)(6), a district court may dismiss a complaint or part of a complaint when a plaintiff fails to set forth well-pleaded factual allegations that "raise a right to relief above the speculative level." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547)).

A facially plausible claim is one in which "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the well-pleaded factual allegations "do not permit the court to infer more than the mere possibility of misconduct," then "the complaint has

alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Furthermore, "the Court must typically limit itself to the contents of the pleadings, including attachments thereto." *Admins. of the Tulane Educ. Fund v. Biomeasure, Inc.*, 08-5096, 2011 WL 4352299, at *3 (E.D. La. Sept. 6, 2011) (Vance, J.) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). "[T]he Court may consider documents that are essentially 'part of the pleadings'—that is, any documents attached to or incorporated into the plaintiff's complaint by reference that are central to the plaintiff's claim for relief."[44] *Zerangue v. Lincoln Nat'l Life Ins. Co.*, No. 19-1939, 2019 WL 2058984, at *2 (E.D. La. May 9, 2019) (Feldman, J.) (quoting *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

## A.

The following facts alleged in Theriot's second amended complaint relate to the Pension Fund's motion to dismiss for failure to exhaust administrative remedies:

---

[44] As stated previously, the parties agreed at a May 29, 2019 status conference that the Court may look at the documents attached to the Pension Fund's motion to dismiss when resolving the motion. *See* R. Doc. No. 37.

Theriot alleges that the April 18, 2017 letter, by which the Pension Fund first informed Theriot that the estate was not entitled to the lump sum payment, did not meet the criteria for a proper claim denial under ERISA.[45] On November 1, 2017, Theriot's then-counsel allegedly wrote to the Fund requesting copies of Plan documents.[46] Theriot asserts that the Pension Fund responded to that letter on November 21, 2017 with an incomplete copy of Plan documents, and failed to include plan amendments, a current summary plan description ("SPD"), and other documents necessary to establish the Plan.[47]

Theriot alleges that on January 5, 2018, Theriot's then-counsel wrote to the Pension Fund requesting payment of the outstanding lump sum benefit.[48] Theriot claims that the Pension Fund responded by letter dated March 2, 2018, offering its explanation as to why Theriot was not entitled to payment of the lump sum benefit and advising her that she had no right to appeal an adverse plan determination or file a lawsuit because such time to pursue a claim had expired.[49] Theriot claims that the Pension Fund also advised in the March 2, 2018 letter that it had concluded that she had failed to exhaust her administrative remedies available under the Plan, foreclosing her ability to seek judicial review.[50]

---

[45] R. Doc. No. 44, at ¶¶ 9–10. As is later stated in this opinion, the Pension Fund does not dispute that its April 18, 2017 letter failed to comply with ERISA procedures.
[46] R. Doc. No. 44, at ¶ 11.
[47] R. Doc. No. 44, at ¶ 11.
[48] R. Doc. No. 44, at ¶ 12.
[49] R. Doc. No. 44, at ¶ 13.
[50] R. Doc. No. 44, at ¶ 14.

Theriot claims that on November 2, 2018, her current counsel wrote to the Pension Fund requesting a decision with respect to Theriot's original claim for benefits or, to the extent that the Pension Fund considered the November 2, 2018 letter as an administrative appeal, requesting a submission date permitting receipt and review of evidence to support Theriot's appeal.[51]  Theriot asserts that she also requested documents, including a complete copy of plan documents applicable to Theriot's claim and other administrative records that evidence the handling of Theriot's claim.[52]

Theriot contends that she did not receive a response to the November 2, 2018 letter, so her counsel wrote to the Pension Fund again on December 19, 2018.[53] Theriot claims that the Pension Fund responded by letter dated January 4, 2019, wherein the Pension Fund allegedly recharacterized its March 2, 2018 letter, asserting that it treated Theriot's counsel's January 5, 2018 letter "in all respects like a claim or appeal" of benefits and that the March 2, 2018 letter included the necessary information that a claim or appeal denial must include to comply with ERISA procedural requirements.[54]  Theriot asserts that the January 4, 2019 letter also advised Theriot that it already fulfilled her request for a full copy of plan documents and that the Pension Fund again advised her that a request for review of the adverse benefits decision was untimely.[55]

---

[51] R. Doc. No. 44, at ¶ 15.
[52] R. Doc. No. 44, at ¶ 15.
[53] R. Doc. No. 44, at ¶ 16.
[54] R. Doc. No. 44, at ¶ 17.
[55] R. Doc. No. 44, at ¶ 18.

**B.**

The Pension Fund argues that Theriot's claim for benefits in count I of her second amended complaint should be dismissed for failure to exhaust available administrative procedures.[56] "Fifth Circuit precedent instructs that 'claimants seeking benefits from an ERISA plan [must] first exhaust available administrative remedies under the plan before bringing suit to recover benefits.'" *Zerangue*, 2019 WL 2058984, at *2 (quoting *Crowell v. Shell Oil Co.*, 541 F.3d 295, 308 (5th Cir. 2008)). "The policies underlying the exhaustion requirement are to: (1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo*." *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1279 (5th Cir. 1990) (internal quotation marks omitted) (quoting *Denton v. First Nat'l Bank of Waco, Tex.*, 765 F.2d 1295, 1300 (5th Cir. 1985)).

"This requirement is not one specifically required by ERISA, but has been uniformly imposed by the courts in keeping with Congress' intent in enacting ERISA." *Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 231 (5th Cir. 1997); *see also Medina v. Anthem Life Ins. Co.*, 983 F.2d 29, 33 (5th Cir. 1993) ("[W]e have fully endorsed the prerequisite of exhaustion of administrative remedies in the ERISA context.") (citations omitted). "Dismissal of a complaint is appropriate when the proper procedure has not been followed for filing a claim and administrative remedies have

---

[56] R. Doc. No. 10-1, at 8.

not been exhausted." *Long v. Aetna Life Ins. Co.*, No. 14-403, 2014 WL 4072026, at *3 (E.D. La. Aug. 18, 2014) (Africk, J.) (citing *Medina*, 983 F.2d at 33). A plaintiff fails to exhaust administrative remedies when she does not file a timely administrative appeal. *Moss v. Unum Grp.*, 638 F. App'x 347, 349–50 (5th Cir. 2016) (citing *Lacy v. Fulbright & Jaworski*, 405 F.3d 254, 257 (5th Cir. 2005)).

In order to trigger the running of the administrative appeal period, notice of the adverse benefit determination need only substantially comply with ERISA's notice requirements, 28 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1(g). *McGowan v. New Orleans Emps. Int'l Longshoremen's Ass'n*, 538 F. App'x 495, 498 (5th Cir. 2013) ("Strict compliance with ERISA is not necessary . . . . Fifth Circuit precedent makes clear that substantial compliance will suffice to trigger the running of the administrative appeal period.") (per curiam) (citing *Lacy*, 405 F.3d at 257). "In assessing whether the administrator has 'substantially complied' with the applicable procedural requirements, the court must 'consider[ ] all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances.'" *Baptist Mem. Hosp.–DeSoto, Inc. v. Crain Automotive, Inc.*, 392 F. App'x 288, 293 (5th Cir. 2010) (quoting *Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 539 (5th Cir. 2007), *abrogated on other grounds by Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2019)).

Article XIII, Section 3 of the Plan provides, in relevant part:

> (a) Notice of Denial of Claim. The Administrative Manager
> or the Eligibility Committee of the Trustees shall give

written notice to a Participant or to his beneficiaries, dependents or authorized other legal representatives, as may be appropriate (collectively referred to in these Benefit Review Procedures as "Participant"), whenever there has been denied in whole or in part such Participant's claim with respect to his eligibility for, or amount of, his Benefits. Such notice shall be given within 90 days . . . after the receipt of Participant's claim and shall include the following:

(1) The specific reason or reasons for the denial;

(2) Reference to pertinent parts of the Plan on which the denial is based;

(3) A description of any additional material or information, if any, necessary for the Participant to perfect his claim and, where appropriate an explanation of why such material or information is necessary;

(4) An explanation of this Fund's Benefit Review Procedure.

. . .

(b) Request for Review. The following subsections (1), (2) & (3) shall govern requests for review of claims that have been denied . . . .

(1) Within 60 days after the receipt, by the Participant, of the notice described in and required to be given pursuant to subsection (a), wherein the Participant's claim for Benefits is denied in whole or in part, . . . the Participant may, in writing,

(i)    Request a review by the Eligibility Committee of such denial of such a claim;

(ii)   Request an inspection of designated, pertinent documents or files;

      (iii)    Submit issues and comments, as well as additional or supplemental material or information which may have been requested in the notice of denial . . . .

(2) As part of such written request for review, a Participant may request a hearing before the Eligibility Committee . . . .

(3) With respect to any matter as to which a Participant requests review in accordance with this subsection (b) of this Section, the Eligibility Committee shall act by the vote of the majority of its members present and shall notify the Participant of its decision:

      (i)    within 60 days after receipt, by the Office of the Administrative Manager of the Fund, of the written request for review of the denial of the claim in accordance with subsection (b)(1) and if no hearing is requested in accordance with subsection (b)(2); or

      (ii)    within 120 days after receipt, by the Office of the Administrative Manager of the Fund, of the written request for review of the denial of the claim in accordance with subsection (b)(1) and if a hearing is requested in accordance with subsection (b)(2).

(c) Further Review. The following subsections (1) & (2) shall govern requests for review of a decision or determination by the Eligibility Committee under subsection (b) . . . .

(1) In the event a Participant is dissatisfied with the decision or determination, upon review, of the Eligibility Committee, issued in accordance with the procedures provided in subsection (b), he may thereupon make a written request for further review, by the Executive Committee, of such decision or determination of the Eligibility

Committee. Such a request for review by the Executive Committee shall be filed by the Participant with the Office of the Administrative Manager within 60 days after receipt, by the Participant, of the decision or determination of the Eligibility Committee issued in accordance with subsection (b)(3).

. . .

(d) Decisions. The decision of the Eligibility Committee, or of the Executive Committee, respectively, on review, shall be in writing and shall include (a) specific reasons for the decision and (2) [*sic*] references to pertinent provisions of the plan on which the decision is based.

(e) Exhaustion of Administrative Remedies. The procedures prescribed by subsections (a), (b) and (c) of this Section must be followed and exhausted before any Participant may institute any legal action (including actions or proceedings before administrative agencies) with respect to a claim concerning his eligibility for or amount of, his Benefits from and under the Fund or Plan.

The Pension Fund asserts that Theriot failed to exhaust administrative procedures because she failed to timely appeal the denial of benefits under the Plan. As stated above, a request for review of a denial of benefits must be made within sixty days of the participant's or claimant's receipt of such denial. The Pension Fund argues that because Theriot did not submit a request for review of the Pension Fund's denial of benefits until November 2, 2018, nearly eight months after its March 2, 2018 letter, Theriot did not adequately exhaust available administrative remedies.[57]

---

[57] R. Doc. No. 10-1, at 10.

In response, Theriot argues that any untimeliness in appealing the benefit denial was a direct result of the Pension Fund's failure to comply with its own and/or ERISA's procedural requirements and that any further attempts by Theriot for review of her claim would have been futile.[58]  Theriot focuses on the initial April 18, 2017 letter that denied Theriot the lump sum benefits.  Theriot asserts that the April 18, 2017 letter failed to meet the criteria for a proper claim denial under ERISA and that such failure directly caused her failure to seek timely review of the denial of benefits.[59]  Specifically, she argues that the Pension Fund's failure to inform Theriot of her appeal rights and the procedures for doing so in the April 18, 2017 letter was the reason that Theriot did not timely appeal her initial denial.

The Pension Fund does not dispute that its April 18, 2017 letter was non-compliant with the Plan procedures and ERISA requirements.[60]  But Theriot's failure to timely appeal the April 18, 2017 denial is not the basis for the Pension Fund's argument as to Theriot's failure to exhaust.  Rather, the Pension Fund asserts that Theriot did not timely appeal its March 2, 2018 letter,[61] which the Court finds substantially complied with ERISA's requirements and the Plan's procedures.

As previously stated, when a claim for benefits is denied, the Plan, in accordance with 29 C.F.R. § 2560.501-1(g), requires that the Administrative Manager

---

[58] R. Doc. No. 20, at 15–16.

[59] R. Doc. No. 20, at 19; *see also* R. Doc. No. 44, at ¶ 12.  In the January 5, 2018 letter, Theriot made a "demand" for the outstanding lump sum payment. R. Doc. No. 10-10, at 1.  The Pension Fund advised Theriot that it construed the January 5, 2018 letter as a request for review of its initial April 18, 2017 denial. R. Doc. No. 10-8, at 1.

[60] R. Doc. No. 10-1, at 11.

[61] R. Doc. No. 10-1, at 10.

or the Eligibility Committee of the Trustees ("Eligibility Committee") provide the participant with written or electronic notification that sets forth the specific reason(s) for the denial, reference the specific provisions of the Plan that served as the basis for the denial, describe additional materials or information, if any, necessary for the participant to perfect her claim and, where appropriate, explain why such information is necessary.[62] The Administrative Manager or Eligibility Committee must also provide an explanation of the Plan's review procedures within applicable time limitations.[63]

On January 5, 2018, Theriot's then-counsel wrote the Pension Fund demanding the value of the outstanding lump sum payment owed to Mrs. Hamann's estate.[64] In response, by letter dated March 2, 2018, the fund director of the Pension Fund, Michael Gantert ("Gantert"), informed Theriot that the Eligibility Committee had denied her claim for Mrs. Hamann's lump sum benefit, provided specific reasons for such determination, provided the Plan provisions relied upon to reach that determination, and attached the Plan's review procedures, which clearly state that any appeal must be filed within sixty days of receipt of such denial.[65] Theriot's next correspondence with the Pension Fund was November 2, 2018, nearly eight months later.[66]

---

[62] R. Doc. No. 10-8, at 4 (Art. XIII, Section 3(a)).
[63] R. Doc. No. 10-8, at 4 (Art. XIII, Section 3(a)).
[64] R. Doc. No. 10-10, at 1.
[65] R. Doc. No. 10-8, at 4.
[66] *See* R. Doc. No. 20-3. The November 2, 2018 letter was sent by Theriot's current counsel and requests a decision as to Theriot's claim for Mrs. Hamann's outstanding lump sum benefit, "or, if The Fund believes such a decision to have been reached

Theriot has failed to explain why the March 2, 2018 letter did not comply with ERISA or provide proper notice of the Plan's review procedures. While the Pension Fund's March 2, 2018 letter advised Theriot that it construed the April 18, 2017 letter as the initial denial of her claim for benefits, making her January 5, 2018 letter untimely, the Pension Fund still provided Theriot with the Plan provisions that made clear that she had sixty days from receipt of the March 2, 2018 letter to appeal the Eligibility Committee's denial.

As previously stated, an initial denial by the administrator or the Eligibility Committee can be reviewed by the Eligibility Committee, but the request for review must be filed within sixty days of the participant's receipt of the denial. If the Eligibility Committee denies the claim for benefits a second time, the participant can request a review by the Executive Committee, but the participant must request review by the Executive Committee within sixty days of the receipt of the Eligibility Committee's decision upon review.

Theriot has not alleged in her second amended complaint that she requested review by the Eligibility Committee of the March 2, 2018 denial of her claim for benefits. Even if the Court were to construe her November 2, 2018 letter as a request for review by the Eligibility Committee, such request was clearly untimely. Additionally, Theriot has not alleged that she requested any further review by the Executive Committee.

---

previously, . . . an administrative appeal of that decision." *Id.* at 1. Counsel's November 2, 2018 letter on Theriot's behalf makes no mention of the Pension Fund's March 2, 2018 letter denying her claim for benefits.

Theriot argues in her response, however, that any further request for review would have been futile. "The exceptions to the exhaustion requirement [in ERISA cases] are limited: a claimant may be excused from the exhaustion requirement if he shows either that pursuing an administrative remedy would be futile or that he has been denied meaningful access to administrative remedies." *McGowan v. New Orleans Emp'rs Int'l Longshoremen's Ass'n*, No. 12-990, 2012 WL 4885092, at *7 (E.D. La. Oct. 15, 2012), *aff'd*, 538 F. App'x 495 (5th Cir. 2013) (per curiam) (citing *Denton*, 765 F.2d at 1302; *Meza*, 908 F.2d at 1279). "These exceptions apply, however, only in extraordinary circumstances." *Cent. States Se. & Sw. Areas Pension Fund v. T.I.M.E.-DC, Inc.*, 826 F.2d 320, 329 (5th Cir. 1987). "A failure to show hostility or bias on the part of the administrative review committee is fatal to a claim of futility." *McGowin v. ManPower Int'l, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004) (citing *Bourgeois v. Pension Plan for Emps. of Santa Fe. Int'l Corps.*, 215 F.3d 475, 479–80 (5th Cir. 2000)).

Theriot does not specifically allege in her second amended complaint that a request for review of the March 2, 2018 letter, either by the Eligibility Committee or the Executive Committee, would have been futile.[67] Rather, she alleges that the Pension Fund advised her of its legal conclusion that she had failed to exhaust her administrative remedies which "foreclose[d] the ability to seek judicial review."[68] Theriot further alleges that the letter "unequivocally proclaimed the [Pension Fund's] position" that she had no right to further administrative or judicial review.[69] Theriot

---

[67] R. Doc. No. 44, at ¶ 14.
[68] R. Doc. No. 44, at ¶ 14.
[69] R. Doc. No. 44, at ¶ 14.

now argues that this determination, which "came directly from the Director of the Fund," demonstrated "*certainty* of an adverse decision."[70] Theriot also asserts that the letter did not provide for any further means of administrative review.[71]

In its March 2, 2018 letter, the Pension Fund advised Theriot that it was reserving its right to assert that she had failed to exhaust administrative remedies due to the untimeliness of her January 5, 2018 letter, and that such untimeliness, pursuant to the Plan, forecloses judicial review.[72] It did not unequivocally tell her that she could not pursue her claims, and it proceeded to advise her of and explain its decision as to her claim for benefits.[73]

Theriot has also failed to allege or argue that she received hostile treatment from the Pension Fund or the Eligibility Committee or that Gantert demonstrated bias in the March 2, 2018 letter that would have rendered futile any request for further review. Theriot continued to correspond with the Pension Fund, seeking (untimely) review of its March 2, 2018 letter.[74] Furthermore, she has not alleged any hostility or bias on the part of the Executive Committee such that any review by it would have been futile. "[T]here is no indication in the record that [the Executive Committee] would not have properly considered [Theriot's] arguments and evidence if she had submitted them within the [60]-day period." *Swanson v. Hearst Corp. Long Term Disability Plan*, 586 F.3d 1016, 1019 n.1 (5th Cir. 2009) (per curiam).

---

[70] R. Doc. No. 20, at 21 (quoting *Bourgeois*, 215 F.3d at 479).
[71] R. Doc. No. 20, at 21.
[72] R. Doc. No. 10-8, at 2.
[73] R. Doc. No. 10-8, at 2–3.
[74] *See* R. Doc. Nos. 20-3–20-4.

To the extent that Theriot argues she did not timely pursue her administrative remedies because the March 2, 2018 letter did not provide for further means of administrative review or state that she could seek further administrative review, the Court is not convinced. The Plan's administrative appeal procedures were enclosed with the March 2, 2018 letter sent to Theriot, as stated in the letter.[75] In her opposition, Theriot did not dispute the Pension Fund's assertions that the procedures were enclosed and she even acknowledged her receipt of said procedures.[76] Theriot was in possession of the Plan's procedures and did not follow them after receiving a substantially compliant denial. *See McGowan*, 538 F. App'x at 498 (finding that the letter substantially complied with ERISA because, "[w]hile the letter itself did not explicitly state that McGowan had 180 days to file a written appeal, it incorporated that information by specifically identifying the pages on which the 180-day rule was located," and "a copy of the benefit booklet was included with the letter").

The Court finds that Theriot failed to exhaust her administrative remedies and that any exceptions to such a requirement are inapplicable in this case. Theriot has also failed to demonstrate that she will be able to exhaust her administrative remedies in the future, considering her untimely attempt to appeal the March 2, 2018 letter. Accordingly, the Court dismisses count I of the second amended complaint, Theriot's claim for benefits pursuant to § 1132(a)(1)(B), with prejudice. *See Moss*, 638 F. App'x at 349–50 (affirming the district court's dismissal with prejudice because the

---

[75] R. Doc. No. 10-8, at 2.
[76] R. Doc. No. 20, at 19.

plaintiff did not show that he would be able to timely exhaust his administrative remedies in the future).

**C.**

The Pension Fund also argues that counts II, IV, and V of Theriot's second amended complaint must be dismissed for failure to exhaust administrative procedures because they are disguised claims for benefits.[77] The Court agrees in part, finding that count IV is a disguised claim for benefits, but that counts II and V must be dismissed for failure to state a plausible claim for relief.

As previously discussed, an ERISA participant or beneficiary may bring a civil action to recover benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) (ERISA § 502(a)(1)(B)).[78] The Supreme Court has "construed [§ 1132](a)(1)(B) narrowly," *Manuel v. Turner Indus. Grp., L.L.C.*, 905 F.3d 859, 864 (5th Cir. 2018) (citing *CIGNA Corp. v. Amara*, 563 U.S. 421, 435–26 (2011)), and explained that "[c]laims under [§ 1132](a)(1)(B) are generally limited to actions 'respect[ing] . . . the interpretation of plan documents and the payment of claims,'" *id.* (alterations in original in part) (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996)). On the other hand, "[§ 1132](a)(3), which sounds in equity, creates a broad cause of action for certain injuries that result from . . . other ERISA violations." *Id.* at 864–65; *see Varity*, 516

---

[77] *See* R. Doc. No. 45; *see also* R. Doc. No. 10-1, at 12.

[78] ERISA §§ 502(a)(1)(B) and 502(a)(3) are codified at 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3), respectively. While many courts use the provisions interchangeably, this Court will use the statutory provisions throughout this opinion for consistency.

U.S. at 512 (describing § 1132(a)(3) as a "catchall" provision).[79] Claims for breach of fiduciary duty are asserted through to § 1132(a)(3), which affords equitable relief. *See id.* at 865; *Innova*, 892 F.3d at 732; *see also Varity*, 516 U.S. at 516 (Thomas, J. dissenting) ("The Court holds today that [§ 1132(a)(3)] . . . provides the individual relief for fiduciary breach that we found to be unavailable under [§ 1132(a)(2)].").

"Generally, an [§ 1132](a)(3) claim for equitable relief may not be maintained when [§ 1132](a)(1)(B) 'affords an adequate remedy.'" *Id.* at 865 (quoting *Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 215 F.3d 516, 526 (5th Cir. 2000)). "[R]elief under § 1132(a)(3) generally is unavailable when a plaintiff may seek monetary relief under § 1132(a)(1)(B)." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 733 (5th Cir. 2018) (citing *Swenson v. United of Omaha Life Ins. Co.*, 876 F.3d 809, 812 (5th Cir. 2017)). "By looking at the underlying alleged injury, it is possible to determine whether a given claim is duplicative of a claim that could have been brought under [§ 1132](a)(1)(B)." *Manuel*, 905 F.3d at 865. "Simply because a plaintiff does not prevail on a § 1132(a)(1) claim does not make viable an alternative claim under § 1132(a)(3)." *Innova*, 892 F.3d at 733 (citing *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998)).

"[A]lthough benefits claims require administrative exhaustion, fiduciary claims do *not*." *Galvan v. SBC Pension Benefit Plan*, 204 F. App'x 335, 339 (5th Cir.

---

[79] Pursuant to § 1132(a)(3), a civil action may be brought "by a participant, beneficiary or fiduciary (A) to enjoin any practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

2006) (per curiam) (citing cases). The Fifth Circuit recognizes, however, that "the exhaustion requirement applies to fiduciary claims that are instead *disguised benefits claims*, not to true breach-of-fiduciary-duty claims." *Id.* (citing *Simmons v. Wilcox*, 911 F.2d 1077, 1081 (5th Cir. 1990)). "[T]he exhaustion requirement would be rendered meaningless if plaintiffs could avoid it simply by recharacterizing their claims for benefits as claims for breach of fiduciary duty." *Simmons*, 911 F.2d at 1081 (citing *Drinkwater v. Metro Life Ins. Co.*, 846 F.2d 821, 826 (1st Cir. 1988)). "Fiduciary claims amount to benefits claims when 'resolution of the claims rests upon an interpretation and application of an ERISA-regulated plan rather than on an interpretation and application of ERISA.'" *Galvan*, 204 F. App'x at 339 (quoting *D'Amico v. CBS Corp.*, 297 F.3d 287, 291 (3d Cir. 2002)).

## Count IV

Count IV of Theriot's second amended complaint asserts a claim for breach of fiduciary duties pursuant to § 1132(a)(3). Specifically, Theriot alleges that the Pension Fund and the Board of Trustees did not comply with ERISA procedures because of their failure to make plan documents immediately available to Theriot upon request; failure to reasonably apprise Mrs. Hamann or Theriot of their rights under the Plan; failure to review Mrs. Hamann's initial claim; failure to issue a denial compliant with ERISA regulations; failure to conduct an administrative review process required by the Plan; failure to clearly convey in the SPD the Pension Fund's position that claims for the payment of a survivor's lump sum benefits could not be made at any time; failure to create an administrative record; failure to properly

advise Theriot of her rights to administrative and judicial review; and undertaking procedures designed to discourage and thwart Theriot's rights to appeal pursuant to the Plan.[80]

Theriot further alleges that the Pension Fund violated its fiduciary duties by operating under a conflict of interest because it was both the entity charged with deciding whether benefits should be paid and the entity that paid such benefits.[81] Finally, Theriot claims that the Pension Fund breached its fiduciary duties by preparing a SPD that deviated from the Plan terms because it allegedly failed to disclose the Fund's position that a survivor's lump sum benefit election could only be made during a period for which benefits had not yet been paid.[82]

The Pension Fund argues that Theriot's claims for breach of fiduciary duty under count IV of her second amended complaint are disguised claims for benefits and should be dismissed for failure to exhaust administrative procedures.[83] Specifically, the Pension Fund argues that count IV alleges irregularities in the Pension Fund's procedures for handling Mrs. Hamann's claim, which is properly brought under § 1132(a)(1)(B) rather than § 1132(a)(3). In *Manuel*, the Fifth Circuit specifically explained that under § 1132(a)(1)(B), "a claimant may question the completeness of the administrative record; whether the plan administrator complied with ERISA's procedural regulations; and the existence and extent of a conflict of

---

[80] R. Doc. No. 44, at ¶ 30.
[81] R. Doc. No. 44, at ¶ 32.
[82] R. Doc. No. 44, at ¶ 33.
[83] R. Doc. No. 45, at 1–3.

interest created by a plan administrator's dual role in making benefits determinations and funding the plan." *Manuel*, 905 F.3d at 867 (alterations in original in part) (quoting *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 263 (5th Cir. 2011)).

Theriot's claims in paragraph 30 of the second amended complaint alleging procedural irregularities and her claim in paragraph 32 alleging that the Pension Fund operated in a "dual role" creating a conflict of interest are cognizable under § 1132(a)(1)(B). Theriot has not responded to the Pension Fund's arguments in connection with these claims or attempted to distinguish such claims from her claim for benefits. The Court finds, therefore, that Theriot's claims in paragraphs 30 and 32 of her second amended complaint must be dismissed as disguised claims for benefits which were not exhausted through administrative procedures.

Theriot only defends her claim in paragraph 33 of her second amended complaint that the Pension Fund maintained a SPD that deviated from the Plan.[84] Specifically, she argues that her claim pursuant to § 1132(a)(3) is based on the fact that the Pension Fund did not comply with 29 U.S.C. § 1102 (ERISA § 102), which requires that the SPD apprise participants of their rights and obligations under the plan and include information concerning the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits."[85]

---

[84] R. Doc. No. 46, at 2; *see* R. Doc. No. 44, at ¶ 33.
[85] R. Doc. No. 46, at 2 (citing 29 U.S.C. § 1022(a) & (b)).

In *Manuel*, the Fifth Circuit held that "claims for injuries related to SPD deficiencies are cognizable under [§ 1132(a)(3)] and not [§ 1132(a)(1)(B)]." *Manuel*, 905 F.3d at 865–66. Theriot argues that, like the plaintiff in *Manuel*, she has alleged that the SPD contained a deficiency and failed to apprise Mrs. Hamann of the exclusion upon which it denied her claim for benefits.[86] *See id.* at 866. While *Manuel* provides that a claim alleging deficiencies in the SPD is properly asserted under § 1132(a)(3), *Manuel* also emphasizes that the Court should focus on the underlying alleged injury to determine whether a claim is duplicative of the claim for benefits.[87] In *Manuel*, the Fifth Circuit remanded the plaintiff's claims related to SPD deficiencies because "the district court concluded that, as a threshold matter, SPD claims could not be maintained under [§ 1132](a)(3)." *Id.* at 866. The Fifth Circuit did not make a finding as to whether the plaintiff had sufficiently alleged an injury related to SPD deficiencies separate from an injury related to the claim for benefits.

This Court recognizes that injuries related to SPD deficiencies are cognizable under § 1132(a)(3). However, the Court finds that Theriot has not alleged an injury related to an SPD deficiency. As previously stated, Theriot alleges that the SPD deviates from the Plan's terms by failing to disclose the Pension Fund's position that the survivor's lump sum benefit election could only be made during a period for which benefits had not been paid rather than "at any time" as stated in the Plan.[88] Theriot

---

[86] R. Doc. No. 46, at 3.

[87] "[C]laims for *injuries* relating to SPD deficiencies are cognizable under [§ 1132](a)(3) . . . ." *Manuel*, 905 F.3d at 865–66 (emphasis added).

[88] R. Doc. No. 44, at ¶ 33.

does not allege, however, that such alleged deviation resulted in any harm or injury other than the denial of benefits. The injury she alleges arises from the denial of benefits based on the terms of the Plan—that she was denied the lump sum benefit even though the Plan states that a survivor can elect the lump sum benefit at any time. Claims that arise under the interpretation of the Plan and plan documents must be brought pursuant to § 1132(a)(1)(B).[89] Therefore, the Court finds that

---

[89] Furthermore, in her second amended complaint, Theriot has neither requested equitable relief, the remedy for claims pursuant to § 1132(a)(3), nor shown why she might be entitled to equitable relief in connection with her claims in count IV. Confusingly, Theriot argues in her supplemental brief that this Court could award her equitable relief in the form of equitable estoppel or surcharge. R. Doc. No. 46, at 4.

The Supreme Court and the Fifth Circuit have recognized that surcharge—"monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment"—is within the scope of appropriate equitable relief with respect to § 1132(a)(3). *Gearlds v. Entergy Services, Inc.*, 709 F.3d 448, 451 (5th Cir. 2013) (discussing *CIGNA Corp. v. Amara*, 563 U.S. 421, 441–42 (2011)). However, Theriot essentially argues that the Pension Fund should be estopped from denying her benefits and that she should receive monetary surcharge for the benefits she would have received. *Id.* Such requests are requests for benefits and lends support to the Court's finding that Theriot has not alleged an injury separate from the denial of benefits in connection with her claims in count IV of her second amended complaint.

Theriot also argues that she does not have to specifically request equitable relief in her complaint for the district court to award such relief. R. Doc. No. 46, at 4. She relies on *Gearlds*, which instructed courts to "focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds*, 709 F.3d at 452. Theriot's reliance on *Gearlds* is unpersuasive. In that case, the plaintiff specifically requested "[a]ny and all other damages and/or relief, equitable or otherwise, to which [he] may be entitled under federal law." *Id.* at 452 (alterations in original). The Fifth Circuit explained that while the plaintiff had not specifically requested the *type* of equitable relief sought, he had nevertheless specifically requested equitable relief and pleaded a plausible claim for such relief. *Id.* Theriot, on the other hand, has not specifically requested any form of equitable relief in connection with the alleged SPD deficiencies or other claims in count IV of her second amended complaint. For the

Theriot's claim for breach of fiduciary duties in connection with alleged deficiencies in the SPD is a disguised claim for benefits and it must also be dismissed for failure to exhaust administrative procedures.

<u>Count II</u>

In count II of her second amended complaint, Theriot asserts that the Pension Fund failed to provide her with a full and fair review of an adverse benefits determination pursuant to ERISA, 29 U.S.C. § 1133; Article XIII, Section 3 of the Plan; and the SPD.[90] Specifically, she alleges that the Pension Fund's April 18, 2017 letter failed to provide reasons for the denial of the lump sum benefit, failed to provide the provisions on which the Pension Fund relied to reach its decision, and failed to describe administrative review procedures, rendering it noncompliant with ERISA, the Plan, and the SPD.[91] Theriot further alleges that the Pension Fund repeatedly

---

reasons stated, the Court, having reviewed the substance of her claims, has determined that count IV is in fact a disguised claim for benefits rather than a claim for breach of fiduciary duty.

[90] R. Doc. No. 44, at ¶ 23. ERISA, 29 U.S.C. § 1133, provides that every employee benefit plan shall:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

[91] R. Doc. No. 44, at ¶¶ 24–25.

failed to apprise her of her appeal rights under ERISA.[92]  Theriot asserts that these violations denied her the right to full and fair review of her benefits claim.[93]

The Pension Fund argues that Theriot's claim pursuant to § 1133 in count II of her second amended complaint can only be enforced though § 1132(a)(3), which, as discussed *supra*, cannot be maintained when it is, in fact, a disguised and duplicative claim for benefits.[94]  The Court does not address such argument, however, because it finds that Theriot has not stated a plausible claim for relief.

As previously discussed,

> Challenges to ERISA procedures are evaluated under the substantial compliance standard. [*Lacy*, 405 F.3d at 256–57 & n.5]. This means that the "technical noncompliance with ERISA procedures will be excused so long as the purpose of section 1133 has been fulfilled." *Robinson v. Aetna Life Ins.*, 443 F.3d 389, 393 (5th Cir. 2006).  The purpose of section 1133 is "to afford the beneficiary an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial." *Schneider v. Sentry Long Term Disability*, 422 F.3d 621, 627–28 (7th Cir. 2005).  The "substantial compliance" test also "considers all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances." *Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416, 436 (6th Cir. 2006).

*Lafleur*, 563 F.3d at 154.

While "ERISA regulations provide insight into what constitutes full and fair review," of which there are many, *id.*, Theriot's allegations with respect to the Pension Fund's alleged violation of § 1133 concern only the contents of the notice she received

---

[92] R. Doc. No. 44, at ¶ 26.
[93] R. Doc. No. 44, at ¶ 25.
[94] R. Doc. No. 45, at 3.

in connection with the Pension Fund's adverse benefits determination.[95] Theriot alleges that the April 18, 2017 letter, the initial adverse benefit determination, failed to comply with ERISA and the Plan.[96] However, having considered all alleged communications between the Pension Fund and Theriot, the Court concluded, in connection with its finding that Theriot failed to exhaust administrative remedies, that the March 2, 2018 letter substantially complied with ERISA. *See supra* Section III.B. Specifically, in contrast to Theriot's allegations, the Pension Fund in the March 2, 2018 letter provided Theriot with specific reasons for the denial of benefits, the Plan provisions it relied upon to reach its decision, and the Plan's review procedures that described her rights and obligations in connection with administrative and judicial review.[97] The March 2, 2018 letter complied with the Plan and 26 C.F.R. § 2560.503(1)-g(1), which "adds a 'gloss' on § 1133(1)'s notice requirement." *Lacy*, 405 F.3d at 256.

Theriot has not alleged any facts that might support an additional theory or basis underlying her claim that the Pension Fund failed to provide her with a full and fair review. Even construing the facts in the light most favorable to Theriot, the Court cannot reasonably infer that the Pension Fund is liable for the misconduct plaintiff alleges in count II of her second amended complaint. Therefore, the Court finds that Theriot has failed to state a plausible claim for relief and it must dismiss count II of the second amended complaint.

---

[95] R. Doc. No. 44, at ¶¶ 24–27.
[96] R. Doc. No. 24, at ¶ 24.
[97] *See* R. Doc. No. 10-8.

<u>Count V</u>

Finally, the Pension Fund moves to dismiss count V of Theriot's second amended complaint. Without reaching the Pension Fund's reasons as to why count V of the second amended complaint should be dismissed as a disguised claim for benefits, the Court finds that Theriot has failed to state a plausible claim for relief.

In count V, Theriot alleges that the Pension Fund interfered with her right to be reasonably apprised of her rights, obligations and review procedures under the Plan, in violation of ERISA, 29 U.S.C. § 1140, in a number of ways.[98] The Court finds that the facts alleged in connection with count V do not state a plausible claim for relief as the Court is unable to draw the reasonable inference that the Pension Fund can be held liable for the misconduct Theriot alleges. The Court will consider each of her allegations with respect to count V of the second amended complaint in turn.

First, Theriot alleges that the Pension Fund interfered with her right to review when it "twice conveyed to Plaintiff its legal conclusion that she had failed to exhaust her administrative remedies and even went so far as to state that her options for administrative/judicial review were foreclosed instead of apprising her of her rights."[99] Theriot specifically makes this assertion in connection with the March 2,

---

[98] R. Doc. No. 44, at ¶ 34. Section 1140 makes it "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . . The provisions of section 1132 of this title shall be applicable in the enforcement of this section."
[99] R. Doc. No. 44, at ¶ 34.

2018 letter, which the Pension Fund provided to the Court in support of its motion to dismiss.[100]

As previously discussed, the Pension Fund did not inform Theriot in the March 2, 2018 letter that her rights to review were foreclosed; rather, the Pension Fund explained its position that her January 5, 2018 letter was untimely and it stated simply that it was reserving its right to assert that Theriot failed to exhaust her administrative remedies pursuant to Article XIII, Section 3 of the Plan.[101] It further advised her that the failure to exhaust administrative remedies forecloses the ability to seek judicial review.[102] The Pension Fund attached the Plan's review procedures to the March 2, 2018 letter, which fully advised Theriot of the process for administrative and judicial review under the Plan.[103] Considering that the Pension Fund advised Theriot of its position and attached the Plan's review procedures that contained her rights and obligations with respect to administrative and judicial review, the Court cannot reasonably infer that the Pension Fund interfered with her rights to review under the Plan by failing to apprise her of such rights.

Next, Theriot asserts that the Pension Fund interfered with her rights in violation of § 1140 because it "failed to apprise Plaintiff of her rights for review, including her right to appeal the adverse benefits determination."[104] As explained

---

[100] R. Doc. No. 44, at ¶ 14; *see generally* R. Doc. No. 10-8.
[101] R. Doc. No. 10-8, at 2.
[102] R. Doc. No. 10-8, at 2.
[103] R. Doc. No. 10-8, at 4–6.
[104] R. Doc. No. 44, at ¶ 34.

above, the Pension Fund provided Theriot with the Plan's review procedures. This allegation is unsupportable.

Third, Theriot alleges that the Pension Fund interfered with her rights in violation of § 1140 by failing "to include clear procedures in the plan documents and SPD for addressing the distribution of benefits in Plaintiff's situation."[105] Theriot has not shown how such failure interfered with her rights under ERISA. "Under [§ 1140] plaintiffs are required to prove by a preponderance of the evidence that the defendants specifically intended to commit acts which violated the provisions of ERISA or the terms of the plan." *Heimann v. Nat'l Elevator Indus. Pension Fund*, 187 F.3d 493, 508 (5th Cir. 1999) *overruled on other grounds by Arana v. Ochsner Health Plan*, 338 F.3d 433 (5th Cir. 2003); *see also Spencer v. FEI, Inc.*, 725 F. App'x 263, 269 (5th Cir. 2018) (per curiam) ("It is at least clear that to establish a *prima facie* case under [§ 1140], a plaintiff must prove that the defendant acted with 'specific discriminatory intent.'"). Theriot's complaint does not make any allegation or allow the Court to draw a reasonable inference that the Pension Fund intended to exclude proper distribution procedures in the plan documents or the SPD or that the Pension Fund failed to do so with the "purpose of interfering" with rights that Theriot may become untitled to under the Plan. *See* § 1140. Such allegation does not state a plausible claim for relief under § 1140.

---

[105] R. Doc. No. 44, at ¶ 34.

Finally, Theriot alleges that the Pension Fund discriminated against the exercise of her rights to appeal and to judicial review "by failing to provide an initial formal claim denial and by subsequently instructing her that she has no rights to judicial review."[106] The Court has already addressed such allegations above.

The Court finds that count V of Theriot's second amended complaint must be dismissed for failure to state a plausible claim for relief.

## IV.

For the foregoing reasons,

**IT IS ORDERED** that the motion is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), is **DENIED**.

**IT IS FURTHER ORDERED** that the motion to dismiss for improper venue, pursuant to Rule 12(b)(3), is **DENIED**.

**IT IS FURTHER ORDERED** that the motion to dismiss pursuant to Rule 12(b)(6) is **GRANTED IN PART**. Counts I and IV of Theriot's second amended complaint are **DISMISSED WITH PREJUDICE** for failure to exhaust administrative procedures. Counts II and V of Theriot's second amended complaint are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim for relief.

---

[106] R. Doc. No. ¶ 34. The Court notes that Theriot's second amended complaint is misnumbered and this citation refers to the second ¶ 34 of the second amended complaint.

The Pension Fund's motion to dismiss count III of the second amended complaint is **DENIED**.

New Orleans, Louisiana, July 17, 2019.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**