# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DEBORAH THERIOT**                                         CIVIL ACTION

**VERSUS**                                                              No. 18-10250

**BUILDING TRADES UNITED**
**PENSION TRUST FUND**                                    SECTION I

## ORDER & REASONS

Before the Court is a motion[1] for reconsideration filed by plaintiff Deborah Theriot ("Theriot") for reconsideration of this Court's July 17, 2019 order and reasons ("Order & Reasons"),[2] granting in part defendant Building Trades United Pension Trust Fund's (the "Fund") motion[3] to dismiss. The Court dismissed counts I and IV of Theriot's second amended complaint with prejudice for failure to exhaust administrative procedures and counts II and V without prejudice for failure to state a claim for relief.[4]

Theriot asserted her claims and this present motion in her capacity as the court-appointed independent administrator of the Succession of Audry L. Hamann ("the Estate").[5] Theriot brings the present motion for reconsideration pursuant to Rule 54(b) of the Federal Rules of Civil Procedure and requests that the Court

---

[1] R. Doc. No. 74.
[2] R. Doc. Nos. 51.
[3] R. Doc. No. 10-1.
[4] R. Doc. No. 51.
[5] R. Doc. No. 44, at 1. Initially, Theriot asserted her claims in her individual capacity, but at a May 29, 2019 status conference, Theriot stated that she was no longer asserting her claims in her individual capacity. R. Doc. No. 37.

reconsider and reverse its order dismissing counts I, II, IV, and V of her second amended complaint.[6] The Fund opposes her motion.[7]

The Court assumes familiarity with the factual background of the case. *See Theriot v. Building Trades United Pension Trust Fund*, No. 18-10250, 2019 WL 3220106 (E.D. La. July 17, 2019).[8]

## **Legal Standard**

### **I.**

Reconsideration of interlocutory orders is governed by Federal Rule of Civil Procedure 54(b). *Namer v. Scottsdale Ins. Co.*, 314 F.R.D. 392, 393 (E.D. La. Apr. 5, 2016) (Africk, J.) (citing *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 701 (5th Cir. 2014)). Rule 54(b) provides that, in a case involving multiple claims or multiple parties, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." "Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (internal citations omitted).

---

[6] R. Doc. No. 74-2, at 2–3, 24.
[7] R. Doc. No. 82.
[8] R. Doc. No. 51.

Compared to Rule 59(e) of the Federal Rules of Civil Procedure—which governs motions to alter or amend final judgments—"Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves [is] more flexible, reflecting the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires." *Id.* at 337 (internal citations omitted). For example, unlike in a Rule 59(e) determination, a court conducting a Rule 54(b) inquiry may consider new arguments that could have been previously raised. *See McClendon v. U.S.*, 892 F.3d 775, 781 (5th Cir. 2018).

When deciding whether to grant a Rule 54(b) motion, courts must "construe the procedural rules with a preference toward resolving the case on the merits" and weigh "the interests of justice." *Austin*, 864 F.3d at 337–38. However, courts should exercise their power "sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays," which disserve the interests of justice. *Ha Thi Le v. Lease Fin. Grp., LLC*, No. 16-14867, 2017 WL 2911140, at *2 (E.D. La. July 7, 2017) (Africk, J.) (quoting *Castrillo v. Am. Home Mortg. Servicing Inc.*, No. 09-4369, 2010 WL 1424398, at *3 (E.D. La. Apr. 5, 2010) (Vance, J.)).

The parties do not dispute that the instant motion was properly filed pursuant to Rule 54(b), as this Court's Order & Reasons constitutes an interlocutory order that did not adjudicate all the claims.[9] However, the Fund argues that this Court should apply the 59(e) standard—which requires a party to show "manifest errors of law or

---

[9] *See* R. Doc. No. 82, at 2–4; R. Doc. No. 74-2, at 2–3. Count III of Theriot's second amended complaint remains pending. *See* R. Doc. No. 51, at 1–2, n.2.

3

fact or newly discovered evidence," *Austin*, 864 F.3d at 336 (internal citations omitted)—because it was common practice in this circuit to do so before *Austin* was decided, *Austin* and *McClendon* authorized this practice to continue, and district courts have continued to apply the Rule 59(e) standard to Rule 54(b) motions for reconsideration since *Austin*.[10]

The Fund misinterprets *Austin* and *McClendon* and relies on district court opinions that do not in fact continue to apply the Rule 59(e) standard to Rule 54(b) motions. In *Austin*, the Fifth Circuit specifically reversed the district court's order denying a motion for reconsideration under Rule 54(b) because the district court applied the Rule 59(e) standard. *Id.* at 336–37. The Fifth Circuit explained that "Rule 54(b) is less stringent than Rule 59(e)," as Rule 59(e) "serves the narrow purpose of allowing a party to correct manifest errors of law or fact to present newly discovered evidence," whereas Rule 54(b) is "more flexible, reflecting the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires." *Id.* (internal citations omitted).

In *McClendon*, the Fifth Circuit, following its decision in *Austin*, noted that "[i]f the district court had relied only on its first basis for denying the motion—that [plaintiff] could not raise his limitation of liability argument for the first time in a motion to reconsider under Rule 59(e), we would be required under *Austin* to vacate the district court's denial of the motion to reconsider and remand for application of the correct standard," but because the district court also determined that the motion

---

[10] *See* R. Doc. No. 82, at 3.

failed on the merits, the court properly exercised its discretion in affirming its prior decision and denying the motion. 892 F.3d at 781–82.

## II.

Theriot moves this Court to reconsider its dismissal of counts I, II, IV, and V of her second amended complaint, all dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Under Rule 12(b)(6), a district court may dismiss a complaint or part of a complaint when a plaintiff fails to set forth well-pleaded factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547)).

A facially plausible claim is one in which "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the well-pleaded factual allegations "do not permit the court to infer more than the mere possibility of misconduct," then "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Furthermore, "the Court must typically limit itself to the contents of the pleadings, including

attachments thereto." *Admins. of the Tulane Educ. Fund v. Biomeasure, Inc.*, No. 08-5096, 2011 WL 4352299, at *3 (E.D. La. Sept. 6, 2011) (Vance, J.) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). "[T]he Court may consider documents that are essentially 'part of the pleadings'—that is, any documents attached to or incorporated into the plaintiff's complaint by reference that are central to the plaintiff's claim for relief." *Zerangue v. Lincoln Nat'l Life Ins. Co.*, No. 19-1939, 2019 WL 2058984, at *2 (E.D. La. May 9, 2019) (Feldman, J.) (quoting *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

## Count I

The Court dismissed count I of Theriot's second amended complaint, a claim for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), for failure to exhaust administrative procedures.[11] For the following reasons, the Court affirms its dismissal of count I.

"Fifth Circuit precedent instructs that 'claimants seeking benefits from an ERISA plan [must] first exhaust available administrative remedies under the plan before bringing suit to recover benefits.'" *Zerangue*, 2019 WL 2059894, at *2 (quoting *Crowell v. Shell Oil Co.*, 541 F.3d 295, 308 (5th Cir. 2008)). In order to trigger the running of the administrative appeal period, notice of the adverse benefits

---

[11] R. Doc. No. 51, at 29.

6

determination need only substantially comply with ERISA's notice requirements. *See* 28 U.S.C. § 1133; 29 C.F.R. § 2560.503-1(g); *see also McGowan v. New Orleans Emps. Int'l Longshoremen's Ass'n*, 538 F. App'x 495, 498 (5th Cir. 2013).

## I. Dismissal of Count I in This Court's Order & Reasons

The Court found in its Order & Reasons, without opposition from the Fund, that the Fund's first benefit denial letter sent on April 18, 2017 did not substantially comply with ERISA's notice requirements and, therefore, did not trigger Theriot's sixty-day period to appeal the denial.[12] The Court did find, however, that the Fund's second denial letter sent on March 2, 2018 was substantially compliant and thus triggered Theriot's sixty days to appeal.[13] Theriot failed to appeal within this time period, and therefore was precluded from seeking judicial review because she did not exhaust administrative remedies.[14]

In order to trigger the running of the administrative appeal period, notice of the adverse benefit determination need only substantially comply with ERISA's notice requirements, 28 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1(g), under the "substantial compliance doctrine." *McGowan v. New Orleans Emps. Int'l Longshoremen's Ass'n*, 538 F. App'x 495, 498 (5th Cir. 2013) ("Strict compliance with ERISA is not necessary . . . . Fifth Circuit precedent makes clear that substantial compliance will suffice to trigger the running of the administrative appeal period.")

---

[12] *Id.* at 24. Under the Fund's Pension Plan, a participant or claimant must request review of a denial of benefits within sixty days of the participant's or claimant's receipt of such denial. *See* R. Doc. No. 10-8, at 4 (Art. XIII, Section 3(b)(1), (c)(1)).
[13] R. Doc. No. 51, at 24.
[14] *Id.* at 26.

(per curiam) (citing *Lacy*, 405 F.3d at 257). "In assessing whether the administrator has 'substantially complied' with the applicable procedural requirements, the court must 'consider[ ] all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances.'" *Baptist Mem. Hosp.–DeSoto, Inc. v. Crain Automotive, Inc.*, 392 F. App'x 288, 293 (5th Cir. 2010) (quoting *Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 539 (5th Cir. 2007), *abrogated on other grounds by Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2019)).

According to the Fund's Pension Plan's ("the Plan")[15] review procedures, an initial denial by the administrator or Eligibility Committee can be reviewed by the Eligibility Committee, but the request for review must be filed within sixty days of the participant's receipt of the denial.[16] If the Eligibility Committee denies the claim for benefits a second time, the participant can request a review by the Executive Committee, but the participant must request review by the Executive Committee within sixty days of the receipt of the Eligibility Committee's decision upon review.[17]

When a claim for benefits is denied, the Plan, in accordance with 29 C.F.R. § 2560.501-1(g), requires that the Administrative Manager or the Eligibility Committee of the Trustees ("Eligibility Committee") provide the participant with written or electronic notification that sets forth the specific reason(s) for the denial, reference the specific provisions of the Plan that served as the basis for the denial,

---

[15] See R. Doc. No. 20-1.
[16] *See id.*
[17] *See id.*

describe additional materials or information, if any, necessary for the participant to perfect her claim and, where appropriate, explain why such information is necessary.[18] The Administrative Manager or Eligibility Committee must also provide an explanation of the Plan's review procedures within applicable time limitations.[19]

On January 5, 2018, Theriot's then-counsel wrote to the Fund demanding the value of the outstanding lump sum payment owed to the Estate.[20] In response, by letter dated March 2, 2018, Fund director Michael Gantert ("Gantert") informed Theriot that the Eligibility Committee had denied Theriot's claim for Audry Hamann's ("Mrs. Hamann") lump sum benefit, provided specific reasons for such determination, provided the Plan provisions relied upon to reach that determination, and attached the Plan's review procedures, which clearly state that any appeal must be filed within sixty days of receipt of such denial.[21] Theriot's next correspondence with the Pension Fund was November 2, 2018, nearly eight months later.[22]

Theriot failed to explain in her opposition to the Fund's motion to dismiss why the March 2, 2018 letter did not comply with ERISA or provide proper notice of the Plan's review procedures.[23] While the Pension Fund's March 2, 2018 letter advised

---

[18] R. Doc. No. 74-2, at 25; R. Doc. No. 10-8, at 4 (Art. XIII, Section 3(a)).
[19] *Id.*
[20] R. Doc. No. 10-10, at 1.
[21] R. Doc. No. 10-8, at 4.
[22] *See* R. Doc. No. 20-3. The November 2, 2018 letter was sent by Theriot's current counsel and requests a decision as to Theriot's claim for Mrs. Hamann's outstanding lump sum benefit, "or, if [the Fund] believes such a decision to have been reached previously, . . . an administrative appeal of that decision." *Id.* at 1. Counsel's November 2, 2018 letter on Theriot's behalf makes no mention of the Fund's March 2, 2018 letter denying her claim for benefits.
[23] *See* R. Doc. No. 51, at 26.

9

Theriot that it construed the April 18, 2017 letter as the initial denial of her claim for benefits, making her January 5, 2018 letter untimely, the Pension Fund still provided Theriot with the Plan provisions that made clear that she had sixty days from receipt of the March 2, 2018 letter to appeal the Eligibility Committee's denial.[24]

Theriot did not allege in her second amended complaint that she requested review by the Eligibility Committee of the March 2, 2018 denial of her claim for benefits.[25] The Court noted that even if it were to construe her November 2, 2018 letter as a request for review by the Eligibility Committee, such request was clearly untimely.[26] Additionally, Theriot did not allege that she requested any further review by the Executive Committee.[27]

Therefore, this Court held that because the March 2, 2018 benefit denial letter substantially complied with ERISA and Theriot failed to appeal the Fund's determination within sixty days, as required by the Plan, Theriot failed to exhaust administrative remedies and thus was not entitled to judicial review.[28] *See Crowell*, 541 F.3d at 308 (holding that "claimants seeking benefits from an ERISA plan [must] first exhaust administrative remedies under the plan before bringing suit to recover benefits"); *see also Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 231 (5th Cir. 1997) (explaining that the exhaustion requirement "is not one specifically required by ERISA, but . . . uniformly imposed by the courts in keeping with Congress' intent in

---

[24] *See id.*
[25] *See id.*
[26] *Id.*
[27] *See id.*
[28] *Id.*

enacting ERISA"); *Medina v. Anthem Life Ins. Co.*, 983 F.2d 29, 33 (5th Cir. 1993) (internal citations omitted) ("[W]e have fully endorsed the prerequisite of exhaustion of administrative remedies in the ERISA context.").

The Court further concluded that no exception to the exhaustion of remedies requirement was applicable because Theriot failed to allege or argue that she received hostile treatment from the Fund or Eligibility Committee or that Gantert demonstrated bias in the March 2, 2018 letter, such that any request for further review would have been rendered futile.[29] Theriot also did not allege any hostility or bias on the part of the Executive Committee such that any review by it would have been futile.[30] "[T]here is no indication in the record that [the Executive Committee] would not have properly considered [Theriot's] arguments and evidence if she had submitted them within the [60]-day period." *Swanson v. Hearst Corp. Long Term Disability Plan*, 586 F.3d 1016, 1019 n.1 (5th Cir. 2009) (per curiam).

## II. Reconsideration of Count I

Theriot argues that the Court should reconsider its dismissal of count I because the first denial letter sent on April 18, 2017 did not substantially comply with

---

[29] *Id.* at 27–28. "A claimant may be excused from the exhaustion requirement if he shows . . . that pursuing an administrative remedy would be futile[.]" *McGowan v. New Orleans Emp'rs Int'l Longshoremen's Ass'n*, No. 12-990, 2012 WL 4885092, at *7 (E.D. La. Oct. 15, 2012), *aff'd*, 538 F. App'x 495 (5th Cir. 2013) (per curiam) (citing *Denton*, 765 F.2d at 1302; *Meza*, 908 F.2d at 1279).
[30] R. Doc. No. 51, at 28.

ERISA.[31] The Court previously held that the April 18, 2017 letter did not comply with ERISA in its Order & Reasons and it will not disturb that decision.[32]

Theriot also asserts that the Court should reconsider its dismissal of count I because the March 2, 2018 letter did not substantially comply with ERISA, for primarily four reasons: it was not sent within ninety days of receiving the initial claim for benefits, as required by 29 C.F.R. § 2560.503-1(f)(1); regardless of the letter's untimeliness, it still did not substantially comply with ERISA because the body of the letter "actively discouraged Plaintiff from seeking any type of review of her claim" and did not fulfill the purpose of § 1133; the Court should have considered the Fund's conflict of interest when addressing count I; and any further appeal of Theriot's claim for benefits to the Fund would have been futile, as evidenced by recent declarations made by Gantert and the Fund's deposition testimony.[33] The Court will address each in turn.[34]

## A. Ninety-Day Requirement

The Fund received Mrs. Hamann's lump-sum application for benefits on April 4, 2017.[35] On April 18, 2017, within ninety days of receiving the claim, the Fund issued a benefit denial letter, but as discussed previously, it did not comply with

---

[31] R. Doc. No. 74-2, at 8–10.
[32] *See* R. Doc. No. 82.
[33] R. Doc. No. 74-2, at 10–18.
[34] The Court notes that Theriot's after the fact of dismissal arguments, although considered by the Court, have caused additional judicial resources to be expended on arguments that should have previously been argued.
[35] R. Doc. No. 51, at 4.

ERISA.[36] The Fund did not send a benefit denial letter that complied with ERISA until March 2, 2018, almost eleven months after receiving Mrs. Hamann's application.[37] Therefore, Theriot argues, the March 2, 2018 letter is procedurally non-compliant, which makes the substantial compliance doctrine inapplicable.[38] *See McGowan*, 538 F. App'x at 498 (holding that in order to trigger the running of the administrative appeal period, notice of the adverse benefit determination need only substantially comply with ERISA's notice requirements).

As a preliminary matter, Theriot argues that the ninety-day period to issue an ERISA compliant benefit denial letter started to run when the Fund received Mrs. Hamann's application for benefits on April 4, 2017, not when it received Theriot's claim for benefits on January 5, 2018.[39] Theriot argues that while the Fund initially stated that it treated the January 5, 2018 letter "in all respects like a claim or appeal," the recently produced minutes to the Eligibility Committee meeting at which the Fund discussed Theriot's letter show that the Fund actually treated the January 5, 2018 letter in all respects like an appeal.[40] Therefore, according to Theriot, because the January 5, 2018 letter was treated like an appeal, the April 4, 2017 letter was the initial claim for benefits, and the Fund had ninety days from April 4, 2017 to issue an ERISA-compliant benefit denial letter.[41]

---

[36] *Id.* at 5, 24.
[37] *Id.* at 24.
[38] R. Doc. No. 74-2, at 10–12.
[39] *Id.*
[40] *Id.* at 11–12.
[41] *Id.* at 12.

In response, the Fund argues that the April 18, 2017 letter denied a claim made by Mrs. Hamann prior to her death, while the March 2, 2018 letter denied a claim made by Theriot on behalf of the Estate on January 5, 2018.[42] The Fund asserts that "[c]ourts have recognized that the participant/beneficiary and estate are separate entities," and because "no evidence shows the Estate had appointed a personal representative [by April 18, 2017]," the Estate could not have "decide[d] whether to pursue the claim for a lump sum payout on its own behalf."[43]

The Fund argues that "[t]he Estate failed to cite any authority holding that it can rely on a procedural violation [the Fund] allegedly committed while processing Mrs. Hamann's claim to argue that [the Fund] violated ERISA procedural requirements while processing the separate claim by Theriot."[44] The Fund further argues that the correct chronology of the case, therefore, is that Theriot submitted a new claim for benefits on January 5, 2018, which the Fund denied in a benefit denial letter that substantially complied with ERISA on March 2, 2018, within the ninety-day timeframe to issue a denial under § 2560.503-1(f)(1).[45]

Section 2560.503-1(f)(1) requires a plan to notify a claimant within *ninety* days of receipt of a claim that the claim is denied, whereas § 2560.503-1(i)(1)(i) requires a plan to notify a claimant of its decision on review within *sixty* days of receipt of a request for review of its initial claim determination. Neither party addressed the

---

[42] R. Doc. No. 82, at 10.
[43] *Id.*
[44] *Id.* at 11.
[45] *Id.*

difference in the two regulations. However, the Court need not decide whether the March 2, 2018 benefit denial letter denied an initial claim for benefits or an appeal of a benefits determination, because either way, the letter was issued within the applicable timeframe—the March 2, 2018 letter was issued fifty-six days from the January 5, 2018 letter and, therefore, satisfies either the sixty-day or ninety-day requirement. The Court will also not decide whether the January 5, 2018 claim was an initial benefit claim made by Theriot or an appeal of the Fund's benefit decision issued on April 17, 2018, because it is of no consequence to this Court's finding that the March 2, 2018 benefit denial letter substantially complied with ERISA, and that the doctrine of substantial compliance is applicable in this case.

Theriot argues that because the Fund did not respond with a substantially compliant ERISA benefit denial letter within ninety days of April 4, 2017, it is precluded from relying on the alleged substantial compliance of its March 2, 2018 letter, citing *Fessenden v. Reliance Standard Life Ins. Co.*, 927 F.3d 998 (7th Cir. 2019).[46] In *Fessenden*, the claimant filed suit before the plan issued its final decision, but after the ninety-day deadline under § 2560.503-1(f)(1) had passed. *Id.* at 1000. The plan argued that its decision should be afforded a deferential standard of review, rather than a de novo standard, because it substantially complied with ERISA. *Id.* at 1001.

The Seventh Circuit held that although the plan was just eight days late in issuing its decision, the substantial compliance doctrine did not apply to the blown

---

[46] R. Doc. No. 74-2, at 12.

deadline because otherwise, the exception would upset the "delicate balance between the administrator's need for more time and the claimant's need for a timely decision." *Id.* at 999, 1003. The court further held that "when a plan administrator fails to follow required procedures, such as deadlines for issuing decisions, a claimant shall be deemed to have exhausted the administrative remedies available under the plan, [§ 2560.503-1(*l*)], and can seek judicial review even if the plan's internal process has not run its course," because "applying the substantial compliance doctrine to blown deadlines is incompatible with the doctrine itself." *Id.* at 1001, 1004 (internal citations omitted).

The court also reasoned that because there would be nothing to consider on review if a plan failed to timely issue a benefit denial letter, it would be impossible for courts to defer to plans, as there would be "neither an exercise of discretion to which a court could defer nor anything for the court to use to measure the degree of the administrator's compliance." *Id.* at 1005 (internal citations omitted).

Theriot argues that, similarly here, the Fund failed to meet the ninety-day deadline and, therefore, the substantial compliance doctrine cannot apply to the March 2, 2018 letter.[47] Theriot further argues that this Court should adopt the Seventh Circuit's approach in *Fessenden* because "[t]he Court should not allow a 'do-over' when Defendants failed to get it right the first time," and "[p]ermitting Defendants a second chance to follow ERISA after the time limit for doing so has

_____

[47] *Id.* at 11–12.

16

expired 'would upset the careful balance that the regulations strike between the competing interest of administrators and claimants.'"[48]

The Fund responds that regardless of whether the April 18, 2017 benefit denial letter was sent in response to a claim made by Theriot on behalf of the Estate or Mrs. Hamann, this case is distinguishable, because in all the cases cited by Theriot, the claimant filed an immediate lawsuit after the fund violated ERISA disclosure requirements, whereas here Theriot "opted to pursue further administrative procedures, which led to one or more ERISA complaint [sic] benefit denial notices."[49]

In addition, the Fund argues that ERISA permits two levels of administrative appeals before the claimant is entitled to file suit. According to the Fund, even if Theriot's second letter on January 5, 2018 was an appeal, it was entirely permissible for the Fund to require Theriot to file another administrative appeal before deeming her to have exhausted administrative remedies.[50] Therefore, '[r]egardless of whether the . . . March 2, 2018 letter is characterized as a denial of claim or as a denial of appeal, [Theriot] was required to initiate the next level of appeal within 60 days of

---

[48] *Id.* at 12 (citing *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 222 (2d Cir. 2006); *Fessenden*, 927 F.3d at 1004).

[49] R. Doc. No. 82, at 7–8.

[50] *Id.* at 12 (citing 29 C.F.R. § 2560.503-1(b) and noting that it "does not contain any requirement on the maximum number of mandatory administrative appeals a plan can require a claimant to file before commencing judicial action; while § 2560.503-1(c)(2) states that a Health Plan may require no more than two levels of mandatory administrative appeal").

receiving the March 2, 2018 letter" in accordance with subsection (c) of the Plan's appeal procedure.[51]

First, the Court assumes, for the purpose of responding to Theriot's arguments, that the April 4, 2017 benefits claim was in fact made by the Estate. Second, the Fund is correct that all of the cases cited by Theriot—in which courts held that the doctrine of substantial compliance did not apply when plans failed to comply with the deadlines set forth in 29 C.F.R. § 2560.503-1—are inapplicable here, where Theriot chose to continue pursuing remedies through the administrative process rather than immediately seeking judicial review.

The concerns present in *Fessenden* are not at issue here. First, finding that the March 2, 2018 denial letter substantially complied with ERISA, and therefore that Theriot failed to exhaust administrative remedies, would not upset the "delicate balance between the administrator's need for more time and the claimant's need for a timely decision" because, even assuming Theriot would have appealed had she received a substantially compliant benefit denial letter on April 18, 2017, she received a substantially compliant denial letter on March 2, 2018 with information on how to appeal, and took no action for almost eight months.[52] Second, unlike in *Fessenden,* where the plan had made no decision on the claim at the time the plaintiff filed suit,

---

[51] *Id.* at 12–13. Theriot does not argue that the Fund's claim procedures included an impermissible number of appeals and, therefore, the Court need not determine how many appeal procedures are potentially allowable under ERISA.

[52] Theriot filed this suit on October 31, 2018 and requested administrative documents from the Fund on November 2, 2018. *See* R. Doc. Nos. 1 & 20-3.

here, the Fund made a decision nearly eight months before Theriot initiated suit and it issued a substantially compliant benefit denial letter with reasons for its decision.

*Eastman Kodak*, which Theriot cites, is similarly uninstructive. In *Eastman*, the Second Circuit held that a plan cannot require a benefits claimant to exhaust administrative remedies that were adopted only after the claimant brought an action to recover benefits. 452 F.3d at 220, 223. The claimant sued to recover benefits when, at the time the plan reviewed his claim, the plan had no claims procedure in place and only responded to the claimant's requests for a decision over the course of a year with "skepticism, befuddlement, and silence." *Id.* at 218. Here, the Fund did have a claims procedure in place, responded to Theriot, and issued a substantially compliant benefit denial letter nearly eight months before Theriot initiated suit.[53]

The Fund's processing of Theriot's claim for benefits is more analogous to the facts of *Wade v. Hewlett-Packard Development Co. LP Short Term Disability Plan,* 493 F.3d 533 (5th Cir. 2007). In *Wade*, the claimant went through two levels of administrative review that did not substantially comply with ERISA, because the plan failed to notify the claimant of its denial within the timeframe set by § 2560.503-

---

[53] Theriot also cites *Halo v. Yale Health Plan, Director of Benefits & Records Yale University*, 819 F.3d 42, 57–58 (2d Cir. 2016), which is similarly inapposite, because unlike the Fifth Circuit, the Second Circuit does not recognize the substantial compliance doctrine and instead places the burden on the plan to prove that its deviation from ERISA regulations was inadvertent and harmless. *See* R. Doc. No. 74-2, at 8. The Second Circuit remanded the case for a determination of whether the plan met its burden when its notification satisfied the timing requirements of ERISA but failed to include the requisite notice provisions. *Id.* at 61; *see also Halo v. Yale Health Plan*, 49 F. Supp. 3d 240, 258 (D. Conn. 2014).

1, among other reasons. *See id.* at 538. The claimant finally received proper review of his claims and an ERISA-compliant benefit denial letter a full year after he initially submitted his claim. *See id.* at 539. The Fifth Circuit reasoned that "[t]he end goal of judicial intervention in ERISA is not to correct problems at every level of plan administration, but to encourage resolution of the dispute at the administrator's level before judicial review." *Id.* at 540. Therefore, the court reasoned, "although the Plan's claims processing at the first two levels of review did not comply with Section 1133, the final level of review, and the most relevant one, substantially complied and intended to correct the disputed procedural and technical errors below." *Id.* at 540. Thus, "[the claimant] was provided with 'full and fair review' of his claims based on an examination of all communications at all levels between the administrator and the beneficiary." *Id.*

Here, the communications between the Fund and Theriot "as a whole . . . constituted a meaningful dialogue between the beneficiary and administrator despite technical violations" and, therefore, Theriot was provided with a full and fair review of her claims. *Id.* As in *Wade*, the Fund did not comply with all ERISA regulations, because it failed to notify Theriot of its denial in a timely fashion. However, the Fund and Theriot engaged in back-and-forth communications regarding requests for documents and claims for benefits, which culminated in the Fund sending a substantially compliant benefit denial letter with its reasons for denying the claim

and information as to the proper means and timeframe to appeal eleven months after Theriot's initial claim for benefits.[54]

Theriot could have requested another level of review within the sixty-day period to appeal, but she chose not to do so. Therefore, the doctrine of substantial compliance is not inapplicable merely because the Fund did not meet the ninety-day requirement to notify Theriot that her initial claim was denied. The Fund did eventually send a benefit denial letter that substantially complied with ERISA in all other respects, Theriot chose not to appeal within the timeframe outlined in the appeal procedures attached to the March 2, 2018 benefit denial letter, and Theriot did not file suit until almost eight months after she received the substantially compliant benefit denial letter.[55]

Theriot next argues that she suffered prejudice as a result of the Fund's failure to comply with the notice requirement and therefore the "Court should reject [the

---

[54] The Fund initially denied the claim for benefits on April 18, 2017. R. Doc. No. 10-7. Theriot's counsel requested plan documents from the Fund on November 1, 2017 and requested payment of the outstanding lump sum benefit on January 5, 2018. R. Doc. Nos. 10-9 & 10-10. The Fund considered the benefits claim, either as an initial claim or appeal, on February 20, 2018, and issued its second benefit denial letter on March 2, 2018. R. Doc. Nos. 74-6 & 10-8.

[55] Theriot further alleges that the recently produced minutes from the meeting of the Eligibility Committee on April 18, 2017 "indicate that Audry Hamann's claim was not the subject of a full committee discussion," but instead removed upon request of an employee who "[came] to a conclusion, independent of the Eligibility Committee, that Mrs. Hamann was not eligible for benefits." R. Doc. No. 74-2, at 5. Even if this evidence shows that the first level of review did not substantially comply with ERISA, "the final level of review, and the most relevant one, substantially complied" with ERISA, and the fact is that Theriot was apprised of her right to appeal and failed to do so within the appropriate timeframe. *See Wade*, 493 F.3d at 540. Therefore, Theriot was still provided with a full and fair review of her claims regardless of the alleged deficiencies in the first level of review.

Fund's] attempt to benefit from [its] failure to comply[.]"[56] Theriot contends that the Fund's admission that the April 18, 2017 benefit denial letter did not substantially comply with ERISA, and Gantert's declaration that the Eligibility Committee may have viewed Theriot's January 5, 2018 claim differently had she argued that the first benefit denial letter did not substantially comply with ERISA, show that the Fund is attempting to "place the burden of rectifying [its] failure to provide a coherent review process on Plaintiff."[57] Gantert declared that "[h]ad the Plaintiff filed a timely appeal and argued that [her] January 5, 2018 request for benefits was timely submitted because the Pension Fund's April 18, 2017 benefit denial letter violated ERISA, [he] would have asked Fund Counsel to research that question, so that the proper advice [could] be provided to the Eligibility Committee," which likely "would have stopped relying on the untimeliness of the January 5, 2018 request as a ground for denying the request."[58]

Theriot argues that the Fund's alleged unawareness that its initial benefit denial letter did not comply with ERISA "is a claim of implausible ignorance of the basic functions of ERISA," and that the Fund's argument that "the only way they could have possibly realized that their meager, four sentence denial letter was non-compliant was by receiving notice from Plaintiff" is not credible.[59] Theriot also argues

---

[56] R. Doc. No. 74-2, at 12–13.

[57] *Id.* at 13.

[58] *Id.* (quoting R. Doc. No. 68-5, at ¶ 12).

[59] *Id.* at 14–15. Theriot points to the fact that the Fund manages over $2 billion in assets, services over 26,000 participants, and uses in-house counsel at every stage of the claims administrative process. *Id.* at 14. Therefore, Theriot argues, the claim that

that "[a]ny attempt to rectify [the failure to comply with ERISA] through a letter sent eight months too late is ineffective," and "[a]s a result of that failure, Plaintiff has been forced to overcome a finding of untimeliness in the pursuit of her claim – a finding that is entirely the fault of Defendants."[60]

The Fund responds that Theriot cannot argue that she "was prejudiced by the [the Fund's] alleged failure to issue an ERISA-compliant benefit denial on April 18, 2017," as "[t]he ERISA compliant denial dated March 2, 2018 denied Theriot's claim for a lump sum payout because the claim was barred by [the Fund's] plan language, while [also] reserv[ing] the right to also argue the claim was foreclosed from judicial review because it was a disguised and untimely appeal from an earlier benefit denial."[61] Additionally, the Fund argues, the letter gave Theriot notice of her right to appeal that decision.[62] Further, "[e]ven if [the Fund] did not assert the procedural defense in its March 2, 2018 benefit denial letter, it still would have denied the claim on the merits," and "[t]he Estate has not provided the Court with any evidence showing that it would have filed a timely appeal had [the Fund] denied its claim on substantive but not procedural grounds."[63]

Theriot has not shown that she suffered any prejudice as a result of the Fund's failure to issue an ERISA-compliant benefit denial letter within ninety days of the

---

the Fund did not know the April 18, 2017 letter was insufficient to meet ERISA regulations is not credible. *Id.*

[60] *Id.* at 14–15.

[61] R. Doc. No. 82, at 9–10.

[62] *Id.*

[63] *Id.* at 10.

Estate's initial claim for benefits on April 4, 2017.[64] As discussed previously, she had the proper procedures for appealing the March 2, 2018 benefit denial letter, regardless of the reason why the claim for benefits was denied, and chose not to appeal. The fact that Theriot has "been forced to overcome a finding of untimeliness in the pursuit of her claim" is not "entirely the fault of [the Fund]," but rather the direct result of Theriot's own inaction.[65]

Theriot provides no evidence other than conclusory allegations that the non-compliant benefit denial letter sent on April 18, 2017 was purposefully non-compliant in an effort to avoid giving Theriot's claim a full and fair review. Even if Theriot could prove that the Fund purposefully sent an initial non-compliant benefit denial letter, she has cited no authority for her argument that the Fund's alleged ill-will precludes it from relying on the substantial compliance of a subsequent benefit denial letter to trigger Theriot's sixty days to appeal or that it automatically precludes a finding that the Fund provided a full and fair review. The Court finds that the March 2, 2018 letter substantially complied with ERISA even though it **may** have not been issued within the timeframe required by § 2560.503-1.

---

[64] The Court again assumes, *arguendo*, that the April 4, 2017 was in fact the initial claim for benefits, and the January 5, 2018 letter to the Fund was an appeal of the denial of the April 4, 2017 claim. It is unnecessary for the Court to determine whether the January 5, 2018 letter to the Fund was, in fact, an initial claim for benefits rather than an appeal because it is immaterial to the Court's determination that the March 2, 2018 letter substantially complied with ERISA and that the substantial compliance doctrine applies in this case.

[65] *See* R. Doc. No. 74-2, at 14–15.

## B. The March 2, 2018 Benefit Denial Letter's Substantial Compliance

Theriot argues that regardless of the March 2, 2018 letter's untimeliness, it still does not substantially comply with ERISA. Theriot contends that the Fund did not include the Plan's administrative review procedures to advise Theriot of her additional rights, but "to bolster [its] arguments that she was already irredeemably late in the pursuit of her claim."[66] Theriot further asserts that the body of the letter "actively discouraged [her] from seeking any type of review of her claim" by stating that the untimeliness of Theriot's January 5, 2018 letter "forecloses the ability to seek judicial review."[67] Accordingly, Theriot concludes, the March 2, 2018 letter fails to comply with the purpose of 29 U.S.C. § 1133, which is "'to afford the beneficiary an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial,'" and thus did not substantially comply with ERISA.[68]

First, Theriot cites no authority indicating that a plan's motivation for including its review procedures is relevant to determining whether the benefit denial letter substantially complied with ERISA. In fact, as the Fund correctly points out, under § 2560.503-1(g)(1)(iv), a plan *must* provide a "description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of [ERISA] following an adverse benefit determination on review[.]"[69] *See also Dialysis Newco Inc. v.*

---

[66] R. Doc. No. 74-2, at 15.
[67] *Id.*
[68] *Id.* at 16 (quoting *Wade*, 493 F.3d at 539).
[69] *See* R. Doc. No. 82, at 5.

*Community Health Systems Trust Health Plan, et al.*, No. 5:15-CV-272, 2017 WL 2591806 at *11 (S.D. Tex. June 14, 2017) (holding that the plan did not comply with the requirement to include a description of the plan's review procedures because the benefit denial letters all failed to inform the claimant that it had a right to a second appeal, provided incorrect information about the appeals process, and/or failed to provide the relevant time frame for an appeal and that the claimant had a right to bring an ERISA action), *rev'd on other grounds,* No. 18-40863, 2019 WL 4296698 (5th Cir. Sept. 11, 2019).

Second, the Fund argues that Theriot's assertion that the March 2, 2018 benefit denial letter violates the "purpose" of § 503 of ERISA, "rather than the regulation promulgated . . . to carry out the 'purpose' of § 503," is "contrary to the plain meaning of § 503(2), which . . . only requires [the Fund] to afford [Theriot] a reasonable opportunity for a full and fair review."[70] The Fund further argues that it did afford Theriot a reasonable opportunity for a full and fair review, because it "provid[ed] Theriot [with] a full copy of the Fund's claim review procedures, so that Theriot [could] evaluate how to exhaust available administrative procedures."[71] The Fund asserts that it was not "actively discourag[ing] [Theriot] from seeking any type of review of her claim," but rather was required to include its procedural argument that the January 5, 2018 claim was untimely in order to reserve it for future litigation.[72]

---

[70] *Id.*

[71] *Id.*

[72] *Id.* at 6.

The Fund is correct that ERISA requires it to set forth in benefit denial letters "[t]he specific reason or reasons for the adverse determination," and "[r]eference to the specific plan provisions on which the determination is based[.]" § 2560.503-1(g)(1)(i)-(ii). The Fund had no choice but to include the procedural argument that the January 5, 2018 claim was untimely and foreclosed judicial review, because if a court were to later find that the first benefit denial letter on April 18, 2017 was substantially compliant with ERISA, the Fund would not be able to argue that the January 5, 2018 appeal was therefore untimely. *See George v. Reliance Standard Life Ins. Co.*, 776 F.3d 349, 353 (5th Cir. 2015) (holding that the court was limited to considering whether the record supports the reasons that the plan provided to the claimant during the claims proceeding, because "allowing plan administrators to offer new justifications for a denial after the claims process has ended would undermine the claims system that Congress envisioned when it drafted ERISA's administrative review provisions"); *Lafleur v. Louisiana Health Service & Indemnity Co.*, 563 F.3d 148, 154–55 (5th Cir. 2009) (holding that the plan "did not substantially comply with the procedural requirements of ERISA because . . . it raised new grounds for denial in the federal courts that were not raised at the administrative level," among other reasons).

The Court is also not convinced that the March 2, 2018 benefit denial letter "actively discouraged" Theriot from seeking judicial review. The letter, in three sentences, states that the Fund is "reserv[ing] the right to assert [the defense]" and

that such a defense would "foreclose[] the ability to seek judicial review."[73] The letter then continues for over a page, outlining the Fund's interpretation of the plan and explaining why it denied Theriot's claim on the merits.[74] But even if Theriot was discouraged from seeking further review of her claim, the inclusion of the procedural defense did not violate ERISA regulations *or* the purpose of ERISA because Theriot was still "afford[ed] . . . an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial." *Wade*, 493 F.3d at 539 (quotations and citations omitted).[75]

Theriot next argues that attaching the appeals procedure to the March 2, 2018 benefit denial letter was insufficient, given the fact that the body of the letter actively discouraged Theriot from seeking review by stating, "[t]his forecloses the ability to seek judicial review."[76] Theriot also argues that the March 2, 2018 benefit denial letter was non-compliant because the body of the letter failed to mention an appeal to the Executive Committee or indicate the current stage of administrative proceedings.[77]

A plan must include in its benefit denial letter "[a] description of the plan's review procedures and the time limits applicable to such procedures[.]" In *McGowan*,

---

[73] R. Doc. No. 10-8, at 2.

[74] *Id.*

[75] For a discussion of the ways in which the Fund afforded Theriot an explanation of the denial of benefits that is adequate to ensure meaningful review of the denial of her claim, see this Court's Order & Reasons dismissing count I with prejudice. R. Doc. No. 51, at 25–26.

[76] R. Doc. No. 74-2, at 15–16.

[77] *Id.* at 15.

the court held that the benefit denial letter substantially complied with ERISA because "[w]hile the letter itself did not explicitly state that [the claimant] had 180 days to file a written appeal, it incorporated that information by specifically identifying the pages on which the 180-day rule was located," and "a copy of the benefit booklet was included with the letter." 538 F. App'x at 498.

Theriot argues that *McGowan* is distinguishable because the body of the letter in *McGowan* stated that "the beneficiary could appeal and . . . referenced the pertinent pages of the attached Summary Plan Description."[78] In contrast, here, "the Fund did not advise Plaintiff that it had treated her January letter request from counsel as an appeal, [and] failed to include an explanation of any additional materials or procedures Plaintiff could submit for review because [according to the Fund] there was nothing that Mrs. Hamann's estate or Theriot could have submitted to perfect the claim."[79]

To the extent that Theriot argues that the language of the letter somehow negates the attachment of the appeal procedures, the Court is not convinced. The procedures, attached to the letter, properly outline the review process.[80] Like the letter in *McGowan*, the Fund's March 2, 2018 letter "did not explicitly state that [Theriot] had [sixty] days to file a written appeal," but "it incorporated that information" by physically attaching the procedures to the letter. *See* 538 F. App'x at 498. It is true that in *McGowan* the letter specifically identified the pages of the

---

[78] *Id.* at 15–16.
[79] *Id.*
[80] *See* R. Doc. No. 10-8, at 4–6.

enclosed booklet on which the time limit to appeal was located, whereas here the letter did not mention the review procedures but instead just attached them. *Id.* However, the Court finds the difference immaterial, especially considering that the Fund's attached review procedures were only three pages long, whereas the booklet with the appeal procedures in *McGowan* was at least thirty-nine pages long. *See id.* at 497. The Fund's attachment of the review procedures to the March 2, 2018 letter satisfied § 2560.503-1(g)(iv).

Theriot argues next that Gantert's declaration "contradicts and undermines [the Fund's] argument regarding the compliance of the March [2, 2018] letter," because he now admits "there was a manner in which Plaintiff could have perfected her claim, but [the Fund] did not inform her in violation of [29 C.F.R. § 2560.503(g)(1)(iii)]."[81] As previously discussed, Gantert declared that had Theriot argued that the April 18, 2017 benefit denial letter was non-compliant with ERISA and therefore could not start the running of her sixty days to appeal, the Eligibility Committee likely would have stopped relying on the January 5, 2018 letter's untimeliness as a basis for its denial of Theriot's claim, made on behalf of the Estate.[82]

In response, the Fund argues that it "had no obligation to explain to Theriot what arguments to raise in an appeal against the decision to deny benefits."[83] The Fund asserts that "[w]hat C.F.R. § [2560.503-1(g)(1)(iii)] requires instead is for [the Fund] to notify the claimant of additional material or information, if any, necessary

---

[81] R. Doc. No. 74-2, at 14.
[82] R. Doc. No. 68-5, at ¶ 12.
[83] R. Doc. No. 82, at 4.

to perfect the claim," not "what arguments [Theriot] could raise in response to the benefit denial, such as that the April 18, 2017 letter to [Theriot] did not comply with ERISA (or was a benefit denial issued to Mrs. Hamann rather than Theriot) so that it could not start the running of Theriot's 60 days to appeal the benefit denial."[84]

The Court is not persuaded by Theriot's arguments.[85] The types of "additional material or information" that courts have held to be within the scope of 2560.503-1(g)(1)(iii) and thus required in the benefit denial letter have included medical evidence to support a finding that the claim put the claimant in a category of people within the plan's coverage, i.e. psychiatric evaluations, office visit notices, diagnostic testing results, and treatment plans, among others. *See Crosby v. Blue Cross/Blue Shield of Louisiana*, No. 08-693, 2012 WL 5493761 at *9 (E.D. La. Nov. 13, 2012) (Lemmon, J.) (holding that the plan's notice of denial did not comply with ERISA because it failed to inform the claimant that she should submit medical evidence to support a finding that would afford her coverage under a particular benefit); *see also McBurnie v. Life Insurance Co. of N. America*, 763 F. App'x 596, 599 (9th Cir. 2019) (holding that the plan's denial letter complied with ERISA because it informed the claimant that "she could submit additional medical records, test results, and therapy notes"); *Blair v. Metropolitan Life Ins. Co.*, 569 F. App'x 827, 831 (11th Cir. 2014)

---

[84] *Id.*

[85] Section 2560.503-1(g)(1)(iii) requires a plan to include in its notification of denial, "in a manner calculated to be understood by the claimant[,] [a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary[.]"

(holding that the plan provided the claimant with the necessary information to perfect her claim when it listed specific medical documents and reports from specific doctors that it would need to consider the claim on review).

By contrast, in situations such as this one where there is no additional material or information the claimant could submit to perfect her claim, courts have held benefit denial letters are still compliant with ERISA when they do not mention any additional material or information. *See Daboh v. Baylor Health Care System Occupational Injury Benefit*, No. 3:06-CV-1006, 2009 WL 1748868 at *9 (N.D. Tex. June 22, 2009); *Duncan v. Assisted Living Concepts, Inc. et al.*, No. 3:03-CV-1931N, 2005 WL 331116 at *4 (N.D. Tex. Feb. 10, 2005).

The Fund denied Theriot's claim either because it was untimely, failed on its merits under the Fund's interpretation of the current plan terms, or both.[86] Regardless of the reason or reasons for which the Fund denied Theriot's claim, there is no additional material or information Theriot could have provided to perfect her claim—Theriot could not suddenly make her claim timely, or change the terms of the plan or the Fund's interpretation of those terms. "Nor does [Theriot] point to additional information she would have presented that would bolster her claim," *Daboh*, 2019 WL 1748868 at *9, other than the fact that she may have argued that the April 18, 2017 letter failed to comply with ERISA and therefore could not start

---

[86] The Court is aware that the reason for the Fund's denial of Theriot's claim for benefits is disputed. Either reason, or both, would not trigger a duty on behalf of the Fund to provide Theriot with a list of additional material or information needed to perfect her claim, so it is unnecessary to determine the exact reason why the Fund denied Theriot's claim.

the running of her sixty days to appeal. The Court agrees with the Fund, however, that "additional material or information" for purposes of § 2560.503-1(g)(1)(iii) does not include potential legal arguments. Therefore, the Fund's March 2, 2018 benefit denial letter complied with § 2560.503-1(g)(iii).

### C. The Fund's Conflict of Interest

Theriot asserts that the Court should have considered the Fund's conflict of interest in its dual role as the entity determining eligibility for benefits and paying those benefits out of its own pocket when analyzing count I.[87]

"[A] conflict should 'be weighed as a factor in determining whether there is an abuse of discretion." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008). However, Theriot's failure to exhaust administrative remedies precludes her from seeking judicial review of the Fund's decision, so the Court need not even evaluate the merits of Theriot's claim and consider affording discretion to the plan's decision.

---

[87] R. Doc. No. 74-2, at 17 (citing *Metro. Life Ins. Co. v. Glenn* in support. 554 U.S. 105, 112 (2008) (discussing the conflict of interest that exists when plan administrators occupy both roles, because "every dollar provided in benefits is a dollar spent by…the [plan fiduciary]; and every dollar saved . . . is a dollar in [the plan fiduciary's] pocket)).

Theriot points to the fact that the Fund is currently eighty-percent underfunded and labeled as "endangered" by the Department of Labor as further evidence of its conflict of interest. *Id.* Theriot alleges that further information on the Fund's financial status, which it has failed to produce, is relevant to her claim and "crucial for the Court to consider[,]" because "[t]he Fund's financial strife, . . . the fact that it has never encountered the factual scenario presented by Mrs. Hamann's claim," and its conflict of interest "may explain why the Fund, one of the largest pension funds in the country, produced an initial claim denial so blatantly out of line with ERISA procedures," took a "defensive posture . . . in [its] March 2, 2018 letter to Plaintiff's then-counsel," and failed to "produce required documents" that remain outstanding "to this day." *Id.* at 17–18.

Therefore, the Court will not consider the Fund's potential conflict of interest when evaluating Count I.

### D. The Futility of An Appeal to the Fund

Finally, Theriot argues that any appeal of her claim to the Fund would have been futile and, therefore, she should be excused from the exhaustion requirement. *See McGowin v. ManPower Int'l, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004). Theriot argues that the recent deposition of Gantert confirms the futility of any further appeal because "[he] testified that only a change in the facts of the case would result in an overturning of a decision that a claim was untimely."[88]

"A failure to show hostility or bias on the part of the administrative review committee is fatal to a claim of futility." *McGowin*, 363 F.3d at 559 (citing *Bourgeois v. Pension Plan for Emps. of Santa Fe Int'l Corps.*, 215 F.3d 475, 479–80 (5th Cir. 2000)). The Court is not convinced that Gantert's statement that a change in the facts could overturn the decision by the Eligibility Committee shows that the Fund was so hostile or biased against Theriot that any appeal would have been futile. Rather, the Court agrees with the Fund that Gantert's statement shows that the Fund "was open to reconsider its decision based on new information," not that any appeal would have been futile.[89]

Therefore, the Court affirms its dismissal of count I for failure to exhaust administrative procedures because the Fund's March 2, 2018 benefit denial letter

---

[88] *Id.* at 16.
[89] R. Doc. No. 82, at 14.

substantially complied with ERISA and Theriot was afforded a full and fair review of her claim.

## Count II

The Court dismissed count II of Theriot's second amended complaint for failure to state a plausible claim for relief.[90] Count II alleged that the Fund failed to provide Theriot with a full and fair review of an adverse benefits determination pursuant to ERISA, 29 U.S.C. § 1133; Article XIII, Section 3 of the Plan; and the Summary Plan Description (SPD).[91] For the following reasons, the Court affirms its dismissal of count II.

### I. Dismissal of Count II in This Court's Order & Reasons

Theriot specifically alleged that the Fund's April 18, 2017 letter failed to provide reasons for the denial of the Estate's lump sum benefit, provide the provisions on which the Fund relied to reach its decision, and describe administrative review procedures, rendering it noncompliant with ERISA, the Plan, and the SPD.[92] Theriot further alleged that the Fund repeatedly failed to apprise her of her appeal rights

---

[90] R. Doc. No. 51, at 37–39.
[91] R. Doc. No. 44, at ¶ 23. ERISA, 29 U.S.C. § 1133, provides that every employee benefit plan shall:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

[92] R. Doc. No. 44, at ¶¶ 24–25.

under ERISA, and asserted that these violations denied her the right to a full and fair review of her benefits claim.[93]

The Court held in its Order & Reasons that Theriot had not stated a plausible claim for relief because her allegations with respect to the Fund's alleged violation of § 1133 concerned only the contents of the March 2, 2018 benefit denial letter, which the Court found to have substantially complied with ERISA.[94] The Fund provided Theriot with specific reasons for the denial of benefits, the Plan provisions it relied on to reach its decision, and the Plan's review procedures that described her rights and obligations in connection with administrative and judicial review.[95] The Court concluded that because Theriot did not allege any facts that might have supported an additional theory or basis underlying her claim that the Fund failed to provide her with a full a fair review, the Court could not reasonably infer that the Fund was liable for the misconduct Theriot alleged.[96]

## II. Reconsideration of Count II

Theriot argues that the Court should reconsider count II because the Fund's March 2, 2018 letter did not substantially comply with ERISA and, therefore, count II stated a plausible claim for relief. As Theriot previously asserted with respect to count I, because the Fund did not comply with the ninety-day procedural requirement of 29 C.F.R. § 2560.503-1(f)(1), the doctrine of substantial compliance is inapplicable

---

[93] *Id.* at ¶¶ 25–26.
[94] *See* R. Doc. No. 51, at 38–39.
[95] *See* R. Doc. No. 10-8.
[96] R. Doc. No. 51, at 39.

to the March 2, 2018 benefit denial letter.[97] In addition, as she also previously argued, "[t]he new information revealed in the Fund's deposition, including the Fund's treatment of Plaintiff's correspondences and the manner in which it initially denied Audry Hamann's claim, further demonstrates the deviation from ERISA's procedural requirements."[98]

The Court disagrees and finds that the March 2, 2018 letter substantially complied with ERISA, even though the Fund may have failed to comply with the ninety-day deadline in 29 C.F.R. § 2560.503-1. *See supra* Count I, Section II.A. The Court also finds that Gantert's declaration does not negate the March 2, 2018 letter's substantial compliance. *See supra* Count I, Section II.B.

Theriot also argues that the "recently-produced, and yet to be produced, discovery from Defendants directly impacts Plaintiff's ability to assert" count II.[99] Theriot argues that "[t]he deprivation of information directly relevant to Plaintiff's claim, despite numerous requests before and after the filing of this lawsuit, deprived Plaintiff of a full and fair review of her claim[,]" but she fails to identify what additional discovery she needs to assert count II, or how this new information would affect her ability to state a plausible claim for relief.[100] The mere allegation that additional discovery would help Theriot assert her claim does not "raise a right to

---

[97] R. Doc. No. 74-2, at 18–19.
[98] *Id.* at 20.
[99] *Id.*
[100] *Id.*

relief above the speculative level."[101] *See Twombly*, 550 U.S. at 555; *Cuvillier*, 503 F.3d at 401. Accordingly, the Court affirms its dismissal of count II for failure to state a plausible claim for relief.[102]

## Count IV

The Court dismissed count IV of Theriot's second amended complaint, a claim for breach of fiduciary duties pursuant to § 1132(a)(3), because it was a disguised claim for benefits, and Theriot failed to exhaust administrative procedures.[103] For the following reasons, the Court affirms its dismissal with prejudice of count IV.

### I. Dismissal of Count IV in This Court's Order & Reasons

Theriot alleged in count IV that the Fund and the Board of Trustees did not comply with ERISA regulations in several ways,[104] and that the Fund violated its fiduciary duties by operating under a conflict of interest because it was both the entity charged with deciding whether benefits should be paid and the entity that paid such benefits.[105] Further, Theriot claimed that the Fund breached its fiduciary duties by preparing an SPD that deviated from the Plan terms because the SPD failed to

---

[101] In any event, the United States Magistrate Judge denied Theriot's motion to compel additional discovery as untimely, which was pending at the time this motion was filed. R. Doc. No. 76. There was no appeal of such denial.

[102] Theriot also asserts in the present motion that count II is not a disguised claim for benefits. The Court does not address such argument, however, because it finds that Theriot has not stated a plausible claim for relief. R. Doc. No. 74-2, at 19.

[103] R. Doc. No. 51, at 36–37.

[104] R. Doc. No. 44, at ¶ 30.

[105] *Id.* at ¶ 32.

disclose the Fund's position that a survivor's lump sum benefit election could only be made during a period for which benefits had not yet been paid.[106]

The Court dismissed paragraph 30 of the second amended complaint alleging procedural irregularities and the claim in paragraph 32 alleging that the Fund operated in a "dual role" that created a conflict of interest because they were disguised claims for benefits that had not been exhausted through administrative procedures.[107]

In Theriot's response to the Fund's motion to dismiss, Theriot only defended her claim in paragraph 33 of her second amended complaint that the Fund maintained a SPD that deviated from the Plan.[108] Specifically, she argued that her claim pursuant to 29 U.S.C. § 1132(a)(3) was based on the fact that the Fund did not comply with § 1102, which requires that the SPD apprise participants of their rights and obligations under the plan and include information concerning the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits."[109]

This Court recognized that injuries related to SPD deficiencies are cognizable under § 1132(a)(3), but found that Theriot had not alleged an injury related to an SPD deficiency.[110] *See Manuel*, 905 F.3d at 865–66 (holding that "claims for injuries related to SPD deficiencies are cognizable under [§ 1132(a)(3)] and not

---

[106] *Id.* at ¶ 33.
[107] R. Doc. No. 51, at 34.
[108] R. Doc. No. 46, at 2; *see* R. Doc. No. 44, at ¶ 33.
[109] R. Doc. No. 46, at 2 (citing 29 U.S.C. § 1022(a) & (b)).
[110] R. Doc. No. 51, at 35.

[§1132(a)(1)(B)]," and emphasizing that courts should focus on the underlying alleged injury to determine whether a claim is duplicative of the claim for benefits).

Theriot alleged that the SPD deviated from the Plan's terms by failing to disclose the Fund's position that the survivor's lump sum benefit election could only be made during a period for which benefits had not been paid rather than "at any time" as stated in the Plan, but she did not allege that such deviation resulted in any harm or injury other than the denial of benefits.[111] The injury she alleged arose from the denial of benefits based on the terms of the Plan—that she was denied the lump sum benefit even though the Plan states that a survivor can elect the lump sum benefit "at any time."

Claims that arise under the interpretation of the Plan and plan documents must be brought pursuant to § 1132(a)(1)(B). *Innova Hospital San Antonio, Ltd. Partnership v. Blue Cross and Blue Shield of Georgia, Inc.*, 892 F.3d 719, 733 (5th Cir. 2018) (holding that a "claimant whose injury creates a cause of action under [§ 1132(a)(1)(B)] may not proceed with a claim under [§ 1132(a)(3)]") (citation omitted). Therefore, the Court found that Theriot's claim for breach of fiduciary duties in connection with alleged deficiencies in the SPD, alleged in paragraph 33 of Theriot's second amended complaint, was a disguised claim for benefits and had to be dismissed for failure to exhaust administrative procedures.[112]

---

[111] *See* R. Doc. No. 44, at ¶ 33.
[112] R. Doc. No. 51, at 34–37.

## II. Reconsideration of Count IV

In the instant motion, Theriot only challenges the Court's finding that she did not allege an injury related to an SPD deficiency separate from the denial of benefits.[113] Theriot argues that the alleged injury is separate because the SPD failed to disclose the Fund's position that the survivor's lump sum benefit election "become[s] invalid if the beneficiary dies before the payment is made," and had the SPD disclosed the policy, Mrs. Hamann would have read it, realized her benefits could not be converted "at any time," and she would "not have elected to receive the monthly annuities in the first place."[114]

Theriot points to her deposition testimony in which she stated that "when Audry Hamann realized she needed 24-hour caretakers due to her health, she was torn between choosing the monthly payments and opting for the lump-sum payout," and "[h]ad Defendants accurately included the requirements for conversion of the monthly benefits to a lump sum payment, in the SPD, Audry Hamann would not have initially chosen the monthly annuity."[115] Therefore, Theriot asserts, Mrs. Hamann was misled by the SPD and if the SPD had contained the alleged policy, she would initially have chosen the lump-sum payout and Theriot would never have been denied Mrs. Hamann's benefits.[116]

---

[113] R. Doc. No. 74-2, at 21–22.
[114] *Id.* at 21.
[115] *Id.*
[116] *Id.*

It is unnecessary for the Court to consider any such evidence Theriot may have to support her argument that Mrs. Hamann was misled and would not have elected the monthly benefit if the potential consequences were disclosed in the SPD, because, even when assuming the factual allegations as true, Theriot still has not stated a plausible claim for relief. ERISA requires:

> A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries . . . The summary plan description shall . . . be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.

29 U.S.C. § 1022(a). The federal regulations that govern summary plan descriptions provide that a summary plan description "must not have the effect to misleading, misinforming, or failing to inform participants and beneficiaries." 29 C.F.R. § 2520.102-2(b). The summary plan description must contain "a statement clearly identifying circumstances which may result in disqualification, ineligibility, or denial, loss, forfeiture, suspension, offset, reduction, or recovery . . . of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide on the basis of the description of benefits" in the summary plan description. § 2520.102-3(*l*). In addition, "[e]xceptions, limitations, reductions, or restrictions of plan benefits" must be clearly noted. § 2520.102-2(b).

"Because it is merely a summary and cannot contain every term of a plan, omission of certain terms from the SPD will not alter the governing plan." *Contreras v. AT&T Services, Inc.*, 2011 WL 4731172, at *5 (W.D. Tex. Oct. 5, 2011) (citing *Fallo v. Piccadilly Cafeterias, Inc.*, 141 F.3d 580, 584 n.20 (5th Cir. 1998)). "If, however,

the terms of the SPD conflict with the plan, the SPD controls." *Contreras*, 2011 WL 4731172, at *5 (citing *Fallo*, 141 F.3d at 583–84); *see also Thomason v. Metropolitan Life Ins. Co.*, 703 F. App'x 247, 252 (5th Cir. 2017) (internal citations omitted) (holding that because a reasonable plan participant could not read the summary plan description and know with any degree of certainty which of the conflicting provisions in the summary plan description and plan should control, and would have to refer to the actual policy for clarification, the ambiguity had to be resolved in favor of the beneficiary).

Theriot does not cite any authority for her argument that ERISA requires the Fund's interpretation, which ultimately resulted in the denial of the Estate's claim for benefits, to be in the SPD when it is also not in the Plan's terms. This is not a case in which the SPD and Plan's terms conflict, but rather one in which the alleged required provision is located neither in the SPD *nor* the Plan. Assuming, *arguendo*, that the interpretation of the provision in the Plan that resulted in the denial of the Estate's claim for benefits should have been expressly stated in the Plan and, therefore, also potentially the SPD, Theriot would still be claiming that she sustained an injury, i.e. the denial of benefits, as a result of the interpretation of the Plan's terms. Consequently, Theriot's breach of fiduciary duty claim would still arise under the interpretation of the Plan and would have to be brought pursuant to 29 U.S.C. § 1132(a)(1)(B). Therefore, the Court affirms its dismissal of Count IV because count IV is a disguised claim for benefits and Theriot failed to exhaust administrative remedies.

## Count V

The Court dismissed Count V of Theriot's second amended complaint for failure to state a plausible claim for relief.[117] Count V alleged that the Fund interfered with Theriot's right to be reasonably apprised of her rights, obligations and review procedures under the Plan in a number of ways, in violation of ERISA, 29 U.S.C. § 1140.[118] The Court was unable to draw the reasonable inference that the Fund could be held liable for the misconduct Theriot alleged and it therefore dismissed count V for failure to state a plausible claim for relief.[119]

Theriot does not provide any additional evidence or facts supporting any of her allegations that the Fund interfered with her rights, but rather argues that the March 2, 2018 letter did not substantially comply with ERISA, and therefore count V does state a plausible claim for relief because "[t]he Court dismissed [count V] in large part due to its conclusion that Defendants substantially complied with ERISA by virtue of its March 2, 2018 letter."[120] Theriot then argues that her claim under § 1140 can be brought in conjunction with her claim under § 1132(a)(1)(B), and that it is not a disguised claim for benefits.[121]

As previously discussed, the Court continues to find that the March 2, 2018 letter substantially complied with ERISA, although it was issued ninety days after the Estate's initial claim for benefits. *See supra* Count I, Section II.A. Additionally,

---

[117] R. Doc. No. 51, at 40.
[118] *Id.*
[119] *Id.*
[120] R. Doc. No. 74-2, at 22.
[121] *Id.* at 23–24.

44

as previously discussed, the Fund's reservation of its defense that the January 5, 2018 letter was untimely and therefore judicial review was foreclosed did not violate ERISA. *See supra* Count I, Section II.B. It is therefore unnecessary to address whether a claim under § 1140 can be brought in conjunction with a claim under § 1132(a)(1)(B), and/or whether this claim would be a duplicative claim for benefits, because the Court cannot reasonably infer that the Fund interfered with Theriot's rights to review under § 1140.

Finally, Theriot argues that "[t]he recently produced, and yet to be produced, discovery from Defendants directly impacts [her] ability to assert her claim in Count V," because "[t]he additional materials in the administrative record, including the communications that resulted in the denial of Audry Hamann's claim, should have been disclosed months ago," and "[t]he existence of these documents and the Eligibility Committee meeting minutes, and the Fund's actions in withholding them, demonstrate that Defendants' deviation from ERISA's procedures interfered with Plaintiff's rights."[122] Theriot further argues that "Defendants did not even identify the items in the administrative record, in violation of ERISA, until one day before the Court ruled on the motion to dismiss," and "[t]hese actions significantly interfered with Plaintiff's rights under ERISA."[123]

Theriot neither identifies which "yet to be produced discovery" or "additional materials in the administrative record" support her claims nor explains how such

---

[122] *Id.* at 24.
[123] *Id.*

information would show that the Fund purposefully interfered with her rights in the circumstances identified in her second amended complaint.[124] Furthermore, as previously mentioned, the United States Magistrate Judge denied Theriot's motion to compel additional discovery as untimely while this motion was pending, so Theriot will not receive any additional evidence in the future that she can argue may possibly support her claim.[125]

Lastly, Theriot never asked for a continuance of her opposition to the Fund's motion to dismiss and, even now, having had several weeks with the produced discovery, fails to identify the newly produced evidence that supports her allegations.

---

[124] *See* R. Doc. No. 51, at 40–43. First, Theriot alleged that the Fund interfered with her right to review when it "twice conveyed to Plaintiff its legal conclusion that she had failed to exhaust her administrative remedies and even went so far as to state that her options for administrative/judicial review were foreclosed instead of apprising her of her rights." R. Doc. No. 44, at ¶ 34. As just mentioned, the Fund's reservation of the defense was proper. Second, Theriot asserted that the Fund interfered with her rights for review, including her right to appeal the adverse benefits determination. *Id.* at ¶ 34. As explained previously, the Fund provided Theriot with the Plan's review procedures as an attachment to the March 2, 2018 benefit denial letter, which is sufficient notice under ERISA. Third, Theriot alleged that the Fund interfered with her rights by failing "to include clear procedures in the plan documents and SPD for addressing the distribution of benefits in Plaintiff's situation." *Id.* Even considering the newly disclosed discovery in addition to Theriot's complaint, the Court cannot draw a reasonable inference that the Fund intended to exclude proper distribution procedures in the plan documents or the SPD or that the Fund failed to do so with the "purpose of interfering" with rights Theriot may become entitled to under the Plan. *See* 29 U.S.C. § 1140. Finally, Theriot alleges that the Fund discriminated against the exercise of her rights to appeal and to judicial review "by failing to provide an initial formal claim denial and by subsequently instructing her that she has no rights to judicial review." R. Doc. No. 44, at ¶ 34. The Court notes that Theriot's second amended complaint is misnumbered and this citation refers to the second ¶ 34 of the second amended complaint. The Court has already addressed such allegations previously.
[125] R. Doc. No. 76.

Accordingly, the Court affirms its dismissal of Count V without prejudice for failure to state a claim for relief.

**IT IS ORDERED** that the motion for reconsideration is **DENIED**.

New Orleans, Louisiana, September 30, 2019.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**