# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

DEBORAH THERIOT                                  CIVIL ACTION

VERSUS                                           No. 18-10250

BUILDING TRADES UNITED
PENSION TRUST FUND, ET AL.                       SECTION I

## ORDER & REASONS

Before the Court is defendants Building Trades United Pension Trust Fund ("the Fund") and the Fund's Board of Trustees' ("Trustees")[1] (collectively, the "defendants") motion[2] for summary judgment with respect to count III of plaintiff Deborah Theriot's ("Theriot") second amended complaint.[3] Theriot opposes their motion.[4]

Five days after filing her opposition, Theriot filed a motion for leave to supplement her opposition to defendants' motion with two exhibits, which this Court granted.[5] One of these exhibits was Theriot's sworn declaration.[6] Defendants moved for sanctions and to strike Theriot's declaration pursuant to the "sham affidavit rule"[7]

---

[1] Defendants do not dispute that they are proper defendants as to count III, as the Board of Trustees is the administrator of the plan. *See* R. Doc. No. 51, at n.2.

[2] R. Doc. No. 68-4.

[3] *See* R. Doc. No. 44, at ¶¶ 28–29. Counts I, II, IV, and V of Theriot's second amended complaint were dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* R. Doc. No. 51; *Theriot v. Building Trades United Pension Trust Fund*, No. 18-10250, 2019 WL 3220106 (E.D. La. July 17, 2019).

[4] R. Doc. No. 85.

[5] R. Doc. Nos. 92 & 93.

[6] R. Doc. No. 92-3.

[7] R. Doc. No. 95, at 2.

and Theriot opposed that motion.[8] Defendants then moved to supplement their motion for summary judgment with "an order by the 24th Judicial District Court of the State of Louisiana to appoint Deborah Theriot as the independent administrator to the Audry Hamann Estate on November 28, 2018" ("Order of Appointment").[9] Theriot then filed a supplemental memorandum in opposition to defendants' motion for summary judgment.[10] Defendants moved to strike Theriot's supplemental memorandum[11] and Theriot opposed that motion.[12] For the following reasons, the motion for summary judgment is granted.

## I.

Count III of Theriot's second amended complaint alleges that the Fund, through its Trustees, failed to timely produce requested plan documents in violation of ERISA, 29 U.S.C. § 1024(b)(4) and that, therefore, Theriot is entitled to penalties under 29 U.S.C. § 1132(c).[13] Theriot made two separate requests for documents that are at issue: a request on November 1, 2017 (the "2017 request"), and two identical requests on November 2, 2018 and December 19, 2018 (the "2018 requests").

Defendants move for summary judgment on the basis that Theriot did not have standing to request either set of documents under § 1024(b)(4).[14] Alternatively, defendants argue that they complied with the 2017 request and did not fail to produce

---

[8] R. Doc. No. 99.
[9] R. Doc. Nos. 105 & 105-3.
[10] R. Doc. No. 106.
[11] R. Doc. No. 109.
[12] R. Doc. No. 110.
[13] R. Doc. No. 44, at ¶¶ 28–29; *see also* R. Doc. No. 85, at 9.
[14] R. Doc. No. 68-4, at 1–2.

any documents in response to the 2018 requests that must be provided under §
1024(b)(4).[15]

## II.

Summary judgment is proper when, after reviewing the pleadings, the
discovery and disclosure materials on file, and any affidavits, the Court determines
that there is no genuine dispute of material fact. *See* Fed. R. Civ. P. 56. "[A] party
seeking summary judgment always bears the initial responsibility of informing the
district court of the basis for its motion, and identifying those portions of [the record]
which it believes demonstrate the absence of a genuine issue of material fact." *Celotex
Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment
need not produce evidence negating the existence of a material fact; it need only point
out the absence of evidence supporting the other party's case. *Id.*; *see also Fontenot v.
Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden, the nonmoving
party must come forward with specific facts showing that there is a genuine dispute
of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.
574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some
metaphysical doubt as to the material facts,' by 'conclusory allegations,' by
'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air
Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).

---

[15] *Id.* at 2.

A genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . , the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted). The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *Anderson*, 477 U.S. at 248. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

"[A] district court has somewhat greater discretion to consider what weight it will accord the evidence in a bench trial than in a jury trial." *Matter of Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991). "[W]here 'the evidentiary facts are not disputed, a court in a nonjury case may grant summary judgment if trial would not enhance its ability to draw inferences and conclusions.'" *Id.* (quoting *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir. 1978)); *see also Manson Gulf, L.L.C. v. Modern Am. Recycling Serv., Inc.*, 878 F.3d 130, 134 (5th Cir. 2017).

**III.**

Pursuant to 29 U.S.C. § 1024(b)(4),

"[t]he administrator shall, upon written request of any *participant* or *beneficiary*, furnish a copy of the latest updated summary[] plan description, and the latest annual report, any terminal report, the bargaining agreement,

trust agreement, contract, or other instruments under which the plan is established or operated" (emphasis added).

Section 1132(c) gives courts discretion to award penalty damages for violations of § 1024(b)(4):

> "Any administrator . . . who fails or refused to comply with a request for any information which such administrator is required by this subchapter to furnish to a *participant* or *beneficiary*. . . within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper" (emphasis added).

A request for plan documents must "provide clear notice to the plan administrator of the information [the plaintiff] desire[s]" to trigger statutory penalties. *Van Bael v. United Healthcare Services, Inc.*, No. 18-6873, 2019 WL 160183, at *3 (E.D. La. Jan. 10, 2019) (Africk, J.) (quoting *Kollman v. Hewitt Assocs.*, LLC, 487 F.3d 139, 145 (3d Cir. 2007); citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1077 (5th Cir. 1990)) (citations omitted). The "touchstone" of sufficiency "is whether the request provides the necessary clear notice to a reasonable plan administrator which, given the context of the request, should be provided." *Center for Restorative Breast Surgery, LLC v. Humana Health Benefit Plan of La., Inc.*, No. 10-4346, 2015 WL 4394034, at *17 (E.D. La. July 15, 2015) (Fallon, J.) (quoting *Kollman*, 487 F.3d at 146; citing *Fisher*, 895 F.2d at 1077). Whether to award statutory penalties for violations of § 1024(b)(4) is within the discretion of the court. 29 U.S.C. § 1132(c)(1).

## A. Pending Motions

The Court will first address the motions that have been filed since defendants filed their motion for summary judgment. The exhibits filed by both Theriot and defendants to supplement the summary judgment record relate to whether Theriot, through her counsel at the time (the Javier Firm),[16] had standing to make a request for documents on behalf of Audry Hamann's estate ("the Estate") on November 1, 2017. 29 U.S.C. § 1024(b)(4) only requires plan administrators to respond to requests for information from participants and beneficiaries. Theriot was not a participant or beneficiary under defendants' plan, and she only had derivative standing to request documents as a representative of her mother, Audry Hamann's, estate.[17] *See James v. La. Laborers Health & Welfare Fund*, 766 F. Supp. 530, 531 (E.D. La. 1991) (Feldman, J.) (discussing *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1287–89 (5th Cir. 1988), *overruled on other grounds by Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.*, 698 F.3d 229 (5th Cir. 2012) (mem.)).[18] Therefore, defendants' response to the 2017 request can only trigger statutory penalties if the Javier Firm represented Theriot, in her capacity as administrator of the Estate, on November 1, 2017. Accordingly, Theriot must have had the authority to act on behalf of the Estate on November 1, 2017.

---

[16] Theriot has since retained new counsel.

[17] The Court assumes, *arguendo*, that a person with derivative standing to bring claims under ERISA also has standing to request documents and bring a claim for statutory penalties pursuant to §§ 1024(b)(4) and 1132(c).

[18] The Court discussed at great length Theriot's derivative standing to bring her claims under ERISA in its order and reasons granting defendants' motion to dismiss. R. Doc. No. 51, at 8–9.

Theriot swears in her declaration that she:

> "engaged the Javier Firm to represent [her], both individually and as a representative of [the Estate]. In that capacity, [she] authorized the Javier Firm to request plan documents, and to take whatever steps necessary to protect [her] mother's right to the lump-sum benefit available under the Fund's ERISA plan. Pursuant to this engagement, on November 1, 2017, the Javier Firm requested that [the Fund] produce a complete copy of the plan agreement and other documents as detailed in Exhibit 8[.]"[19]

Defendants filed a motion for sanctions and to strike Theriot's declaration pursuant to the "sham affidavit rule,"[20] which Theriot opposes.[21] Shortly thereafter, defendants filed a motion to supplement the summary judgment record with the Order of Appointment, which shows that Theriot was not appointed independent administrator of the Estate until November 28, 2018.[22] Theriot did not object to this motion, provided that she had the opportunity to file a response.[23] Theriot filed a response, making additional arguments as to why summary judgment should not be granted.[24] Defendants moved to strike Theriot's supplemental memorandum on the grounds that the memorandum did not address the new evidence, the Order of

---

[19] R. Doc. No. 92-3, at ¶¶ 7–8.
[20] R. Doc. No. 95, at 2. The sham affidavit rule provides that a "'party may not manufacture a dispute of fact merely to defeat a motion for summary judgment' . . . because, if 'a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony,' 'the utility of summary judgment as a procedure for screening out sham issues of fact' would be greatly diminished." *Hacienda Records, L.P. v. Ramos*, 718 F. App'x 223, 235 (5th Cir. 2018) (quoting *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000) (citations omitted)).
[21] R. Doc. No. 99.
[22] R. Doc. Nos. 105 & 105-3.
[23] R. Doc. No. 105, at ¶ 12.
[24] R. Doc. No. 106.

Appointment, but rather only made new arguments as to why defendants' summary judgment motion should not be granted.[25] Theriot opposed that motion.[26]

The Court finds good cause to allow defendants to supplement the summary judgment record with the newly discovered evidence because Theriot allegedly did not turn over the Order of Appointment until after defendants moved for summary judgment.[27] Theriot does not argue that defendants possessed the Order of Appointment before they filed their motion. Theriot's declaration does not directly contradict the Order of Appointment, but the Court will consider Theriot's sworn statements in light of the Order of Appointment.[28] Further, the Court will only consider those paragraphs of Theriot's supplemental memorandum that relate to the Order of Appointment.[29] Theriot had several opportunities to argue in opposition to defendants' motion for summary judgment, and the Court finds no reason to allow Theriot to continuously present new arguments and reiterate her previous assertions.

### B. 2017 Request

The Court will first consider Theriot's 2017 request. In a letter dated November 1, 2017, Roger Javier ("Javier") of the Javier Firm sent a letter to defendants advising

---

[25] R. Doc. No. 109-1.

[26] R. Doc. No. 110.

[27] *See* R. Doc. No. 105, at 2.

[28] Theriot declares that she engaged the Javier Firm to represent herself "both individually and as representative of [her] mother's estate." *See* R. Doc. No. 92-3, ¶ 7. Theriot does not directly state that as of November 1, 2017, she was the appointed representative of the Estate. *Id.* The Court will not address whether Theriot's declaration conflicts with her prior deposition testimony because it is irrelevant to the Court's decision. The Court, therefore, exercises its discretion and it declines to impose sanctions on Theriot for filing an allegedly sham affidavit.

[29] R. Doc. No. 106, at ¶¶ 1–2.

them that he "represent[s] the interests of the estate of Ms. Audry Hamann, and also Debbie Theriot and Carl Panebiango, children of Audry Hamann[.]"[30]

As a preliminary matter, defendants argue that "[b]ecause Deborah Theriot did not become the administrator for the Hamann Estate until November 28, 201[8],[31] she had no authority to retain the Javier Firm as counsel for the Hamann Estate by November 1, 2017."[32] Defendants do not dispute that had Theriot been acting on behalf of the Estate, she would have had standing to request documents pursuant to § 1024(b)(4) on November 1, 2017.[33] Therefore, the question is whether Theriot was acting in her personal capacity or on behalf of the Estate when she retained the Javier Firm to make a request for documents on November 1, 2017.

Theriot makes two arguments in her opposition to defendants' motion for summary judgment: first, that defendants are attempting to enforce a "form requirement" for the appointment of an authorized representative that is not in the plan document and, second, that defendants waived their right to raise this argument.[34]

---

[30] R. Doc. No. 85-7, at 1.
[31] Defendants erroneously state in their brief that Theriot did not become administrator of the Estate until November 28, 2017. *See* R. Doc. No. 105, at 3 ¶ 7. Theriot became administrator of the Estate on November 28, *2018*. *See* R. Doc. No. 105-3.
[32] R. Doc. No. 105, at 3 ¶ 7. Theriot does not argue that she had standing in her personal capacity to request documents under 29 U.S.C. § 1024(b)(4).
[33] Defendants dispute that Theriot had standing to make the 2018 requests, but on different grounds. *See* R. Doc. No. 68-4, at 6–10.
[34] R. Doc. No. 85, at 3–6.

Theriot argues in her opposition to defendants' motion to strike her declaration that she was Ms. Hamann's universal successor pursuant to Louisiana Civil Code Article 935 and, therefore, "could represent Mrs. Hamann to enforce her rights immediately upon her death."[35] Further, Theriot argues that she "exercised this ability by engaging the Javier Firm to enforce the payment of the lump-sum benefit to which Mrs. Hamann became entitled prior to her death."[36]

Finally, Theriot argues in her supplemental memorandum in opposition to defendants' motion for summary judgment that "consideration of Plaintiff's claims should have been tolled until such time as a succession representative qualified or until such time as Defendants produced the plan documents giving rise to the Audry Hamann claim."[37] Alternatively, Theriot argues that "the running of the time limitations for administrative review should have been equitably tolled until Audry Hamann officially became estate administrator."[38] The Court will address each of Theriot's arguments in turn.

## 1. Authorized Representative

Theriot argues that defendants are "attempt[ing] to impose a form requirement for the Javier Firm's appointment as the representative of Audry Hamann's estate when no such requirement exists in the plan."[39] Further, Theriot argues that

---

[35] R. Doc. No. 99, at 3.
[36] R. Doc. No. 99, at 3.
[37] R. Doc. No. 106, at ¶ 1.
[38] R. Doc. No. 106, at ¶ 1.
[39] R. Doc. No. 85, at 3.

imposing this "form requirement" that is not included in the plan document and summary plan description violates 29 C.F.R. § 2560.503-1(b)(4).[40]

Pursuant to 29 C.F.R. § 2560.503-1(b)(4), a plan's claims procedures will be deemed reasonable only if "[t]he claims procedures do not preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination." However, "a plan may establish reasonable procedures for determining whether an individual has been authorized to act on behalf of a claimant[.]" *Id.* Theriot argues that defendants are now trying to enforce procedures for determining whether Theriot was authorized to act on behalf of Ms. Hamann when no such "form requirement" was in either the plan document or summary plan description.[41]

The Court finds that Theriot was not an "authorized representative" as contemplated by § 2560.503-1(b)(4) and, therefore, defendants are not attempting to retroactively impose procedures in violation of 29 C.F.R. § 2560.503-1(b)(4). Ms. Hamann did not take affirmative action to authorize Theriot to act on her behalf. Rather, Theriot, by operation of law, gained the right to act on the *Estate's* behalf on November 28, 2018 as its independent administrator.[42] *See, e.g., Van Bael*, 2019 WL 142298, at *6 (discussing whether the plan's procedures were fair and reasonable in light of the written authorization form the plaintiff's *attorney* was required to submit as the authorized representative); *Omega Hospital, LLC v. United Healthcare*

---

[40] *Id.* at 3–4.
[41] *Id.* at 4.
[42] *See* R. Doc. No. 105-3.

*Services, Inc.*, 345 F. Supp. 3d 712, 729–30 (M.D. La. 2018) (discussing patients appointing a *hospital* to act as their authorized representative). Therefore, Theriot was not acting as an authorized representative when she engaged the Javier Firm to request documents on her behalf.

## 2. Waiver

Theriot next argues that defendants waived their argument that Theriot had no authority to retain the Javier Firm as counsel for the Estate on November 1, 2017 because defendants did not raise the argument sooner.[43] Theriot cites *Pitts By and Through Pitts v. American Sec. Life Ins. Co.*, 931 F.2d 351, 357 (5th Cir. 1991) and *Rhorer v. Raytheon Engineers & Constructors, Inc.*, 181 F.3d 634, 645 (5th Cir. 1999), *abrogated on other grounds by CIGNA Corp. v. Amara*, 563 U.S. 421 (2011) in support of her argument.

The Fifth Circuit has recognized the doctrine of waiver in the ERISA context, and it defines waiver as "the voluntary or intentional relinquishment of a known right." *Pitts*, 931 F.2d at 357. There is "a clear dividing line as to when waiver claims are available [in the ERISA context]." *Price v. Metropolitan Life Ins. Co.*, No. 04-338, 2008 WL 4187944, at *3 (N.D. Miss. Sept. 8, 2008). "The key element is that waiver must be intentional." *Id.* "Generally waiver requires proof of the defendant's knowledge, actual or constructive, of the existence of his rights or of all material

---

[43] R. Doc. No. 85, at 4–5. Theriot argues that defendants were required under 29 C.F.R. § 2560.503-1(g)(1)(iii) to notify her of their position that Theriot was not acting on behalf of the Estate immediately upon receiving the 2017 request. However, 29 C.F.R. § 2560.503-1(g)(1)(iii) is entirely inapplicable because it regulates the manner and content of the notification of benefit determinations, not requests for documents.

facts." *Lamb v. Provident Ins. Co.*, No. 2:93CV40, 1994 WL 1890828 at *4 (N.D. Miss. Oct. 4, 1994).

The Fifth Circuit has held that administrators waive their rights to enforce policy provisions when they have full knowledge that a provision is being breached but allow the breach to continue. For example, in *Pitts*, the defendant's policy required a minimum of ten participating employees in the group insurance plan. 931 F.2d at 353. The defendant continued to accept insurance premiums and cash the plaintiff's premium checks "for five months after learning beyond all doubt that [the plaintiff] was the only employee remaining on the policy." *Id.* at 357. The Fifth Circuit held that, therefore, the defendant had waived its right to assert the policy violation as a defense to liability under the policy. *Id.*

Similarly, in *Rhorer*, the Fifth Circuit held that there was a fact issue precluding summary judgment as to whether the plan had waived its right to assert the defense that the employee lacked coverage because he was not actively working. 181 F.3d at 645. The plan knew that the employee was severely ill and had stopped working, but still allowed him to enroll in optional life insurance, accepted his premiums, and failed to return those premiums for over a year. *Id. Rhoher* and *Pitts* were primarily concerned with the plan administrator's conduct prior to the application for benefits, and it was that prior conduct that allowed the inference of waiver.

In contrast, Theriot takes issue not with defendants' conduct regarding Ms. Hamann's application for her late husband's benefits or with Ms. Hamann's

application for lump-sum payment, but rather with defendants not raising their argument, that Theriot did not have the authority as representative of the Estate to engage the Javier Firm to request documents on November 1, 2017, immediately upon receiving the Javier Firm's letter.[44]

Unlike the administrators in *Pitts* and *Rhoher,* defendants, when they responded to the 2017 request, did not know "beyond all doubt" or have any reason to believe for that matter, that the Javier Firm did not properly represent the Estate. *See Pitts*, 931 F.2d at 357; *Rhoher*, 181 F.3d at 645; *Lamb*, 1994 WL 1890828, at *4. The Javier Firm's letter stated that it represented the Estate.[45] Moreover, defendants did not learn, until after they filed their motion for summary judgment, that at the time Theriot made the 2017 request she had not yet been appointed independent administrator of the Estate.[46]

Theriot's claim of waiver is more analogous to the claim in *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 396–97 (5th Cir. 1998). The Fifth Circuit held that it was "unwilling to conclude that the administrator has, by determining that [the plaintiff] was not covered by the [policy], waived the right to interpret any particular provisions of the [policy] once it has been shown that [the plaintiff] was in fact covered." *Id*. The Fifth Circuit found that the administrator "advanced a non-frivolous argument that the [policy] had never been in effect as to [the plaintiff]," and "therefore was not called upon to make any further benefits determinations or even to interpret the terms of

---

[44] R. Doc. No. 85, at 6.
[45] R. Doc. No. 85-7, at 1.
[46] R. Doc. No. 105, at 1–2.

14

the Plan at all in concluding that [the plaintiff] was not covered." *Id.* at 396; *see also Swenson v. Lincoln National Life Ins. Co.*, No. 17-0417, 2018 WL 3028954, at *8–9 (W.D. La. June 18, 2018) (holding that the doctrine of waiver was inapplicable to the defendant's allegedly insufficient appeal denial letter because the plaintiff took issue not with the defendant accepting premiums, but rather with the specific contents of the letter).

Similarly, here, defendants advanced a non-frivolous argument that the Estate "did not have standing as a participant or beneficiary under ERISA [when] it requested information from [defendants]" in their answer to Theriot's second amended complaint.[47] Defendants only had occasion to inquire as to whether the 2017 request was made by Theriot in her personal capacity or on behalf of the Estate after this Court held in its order and reasons dismissing four of Theriot's claims that Theriot, because she was acting on behalf of the Estate, had standing to bring claims under ERISA.[48]

Further, Theriot's assertion that defendants' argument is nothing but "newly conceived procedural deficiencies" is simply incorrect. Defendants stated in their March 2, 2018 letter to the Javier Firm that they "would like to make clear that Ms. Theriot and [her brother] are not Participants, Beneficiaries or Survivors within the meaning of the Plan and as a result the Law."[49] Defendants then stated in their

---

[47] R. Doc. No. 54, at ¶ 4.
[48] *See* R. Doc. No. 51, at 12.
[49] R. Doc. No. 10-8, at 1.

January 4, 2019 letter to Theriot's current counsel[50] that the Fund was reserving the right to assert "that Ms. Theriot and the Estate are not entitled to receive any documents under ERISA, as they are neither Participants nor Beneficiaries under the terms of the Plan and because of the law."[51] Defendants again reiterated their position in their answer to Theriot's second amended complaint on July 26, 2019.[52] The Court finds, therefore, that defendants did not waive their right to assert that Theriot was not acting on the Estate's behalf when she requested documents, through the Javier Firm, on November 1, 2017.

### 3. Universal Successor

Theriot argues that regardless of when she was appointed administrator of the Estate, "Louisiana succession law allows Theriot, as Audry Hamann's daughter and heir to her intestate succession," to "represent Mrs. Hamann to enforce her rights immediately upon her death" as Ms. Hamann's universal successor.[53] Theriot argues that she exercised her ability to represent her mother's rights immediately upon her death by engaging the Javier Firm to enforce the payment of the lump-sum benefit to which Ms. Hamann was allegedly entitled and, therefore, the Javier Firm requested documents on November 1, 2017 on behalf of the Estate.[54]

In response, defendants argue that only a succession representative, not a universal successor, may represent an estate in pursuing its claim for benefits under

---

[50] Theriot retained new counsel after the Javier Firm made the 2017 request.
[51] R. Doc. No. 20-5, at 3.
[52] *See* R. Doc. No. 54, at ¶ 4.
[53] R. Doc. No. 99, at 3.
[54] R. Doc. No. 99, at 3.

ERISA and, therefore, Theriot did not have standing to pursue Ms. Hamann's estate's claim for benefits and request documents until November 28, 2018, when she was appointed independent administrator of the Estate. The question is, therefore, whether Theriot could exercise the rights of the Estate to pursue a claim for benefits under ERISA immediately upon Ms. Hamann's death as universal successor, or whether she only gained this right once she was appointed independent administrator of the Estate.[55]

"The universal successor represents the person of the deceased, and succeeds to all his rights and charges." La. Civ. Code art. 3506. Pursuant to Louisiana Civil Code Article 935, "[i]mmediately at the death of the decedent, universal successors acquire ownership of the estate," and "[p]rior to the qualification of a succession representative only a universal successor may represent the decedent with respect to the heritable rights and obligations of the decedent." Universal successors "may institute all actions that the decedent could have brought unless the estate is under administration, in which case the succession representative is the proper party plaintiff or defendant[.]" *Id.* Revision Comments (1997) (d). "If a universal successor exercises his rights of ownership after the qualification of a succession representative, the effect of that exercise is subordinate to the administration of the estate." La. Civ. Code art. 938.

---

[55] The Court notes that Theriot has a brother, Carl Panebiango, who may have also been a universal successor to the Estate. The Court will not address this potential issue, however, because defendants do not argue that Theriot was not a proper universal successor to act on behalf of the Estate.

As universal successor, Theriot had the right to institute all actions that Ms. Hamann could have brought, such as Ms. Hamann's claim for benefits under the pension plan, immediately upon Ms. Hamann's death. *See* La. Civ. Code art. 935, Revision Comments (1997) (d). Theriot was also subsequently appointed independent administrator of the Estate, so she had the authority to act on behalf of the Estate with respect to Ms. Hamann's claim for benefits both prior to and following her appointment as succession representative. *See* La. Civ. Code arts. 935, 938.

Defendants argue that because Louisiana Civil Code Article 935 states that "only a universal successor may represent the decedent with respect to the heritable rights and obligations of the decedent," and Ms. Hamann's claim for benefits under ERISA is a nonheritable right, Theriot could only bring an action under ERISA and request documents on behalf of the Estate once she was appointed independent administrator.[56] Confusingly, defendants argue that a nonheritable right is in fact heritable, but may only be enforced by a succession representative appointed by the state, rather than by a universal successor.[57]

Defendants are mistaken for two reasons: first, a claim for benefits is a heritable right which survives the death of a participant or beneficiary under ERISA and, second, under Louisiana law an independent administrator does not have the power to enforce a set of rights that a universal successor otherwise cannot in the absence of an independent administrator.

---

[56] R. Doc. No. 112, at 4.
[57] *Id.*

In regard to defendants' first error in reasoning, it is well settled that a claim for benefits under ERISA survives the death of a plan participant or beneficiary. The claim for benefits passes to the decedent's estate and confers derivative standing to representatives of the estate to sue on the decedent's behalf, provided that there is a colorable claim to benefits. *James*, 766 F. Supp. at 533–34 (finding that a succession representative could sue derivatively on behalf of the deceased for a claim to benefits under ERISA); *see also Ibson v. Healthcare Services, Inc.*, 877 F.3d 384, 388 (8th Cir. 2017) (holding that "it is the representative of a deceased participant's estate that has standing to sue for breach of ERISA fiduciary duties" and, therefore, a legal representative of the decedent's estate must bring the claim for benefits, not the decedent's heir in her personal capacity) (citations omitted); *Harrow v. Prudential Ins. Co. of America*, 279 F.3d 244, 248 (3d Cir. 2002) ("Because Congress intended ERISA to be remedial, ERISA actions survive death." (citing 29 U.S.C. § 1001(b); *Duchow v. N.Y. State Teamsters Conference Pension & Retirement Fund*, 691 F.2d 74, 78 (2d Cir. 1982)).[58]

In regard to defendants' second error in reasoning, defendants fail to cite any authority which states that a claim for benefits under ERISA and the accompanying

---

[58] Defendants argue that Theriot did not have the right to request documents on behalf of the Estate immediately upon Ms. Hamann's death, because ERISA's anti-alienation provides that "[e]ach pension plan shall provide that *benefits* provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1) (emphasis added); *see Guidry v. Sheetmetal*, 493 U.S. 365, 371–72 (1990) (holding that pension benefits are not subject to assignment or garnishment). However, Ms. Hamman's death did not assign or alienate Ms. Hamann's benefits under the pension plan, but rather her claim to benefits succeeded to her estate immediately upon her death.

collateral right to request documents to pursue the claim do not pass to a decedent's universal successor, but rather only to the independent administrator of the estate.[59] All of the cases cited by defendants address whether the plaintiff could sue in his or her personal capacity, rather than on behalf of the decedent's estate.[60] That is not at issue here. Theriot is not arguing that she had standing in her personal capacity to request documents, but rather that she had standing as universal successor to request documents, on behalf of the Estate.

Therefore, Ms. Hamann's right as a beneficiary under the Plan to request documents under 29 U.S.C. § 1024(b)(4) to pursue a claim for benefits passed to her estate immediately upon her death and, Theriot, as universal successor, had the authority to exercise this right to request documents on behalf of the Estate on November 1, 2017.[61]

---

[59] The Court ordered defendants to submit additional briefing on this issue. R. Doc. No. 111. While defendants' supplemental memorandum sheds light on their argument, it does not provide any authority that supports their position. *See* R. Doc. No. 112.

[60] *See* R. Doc. No. 112, at 3.

[61] Defendants argue that Theriot cannot meet her burden of proof as to whether the Javier Firm represented the Estate and, therefore, had standing to request documents on November 1, 2017, because Theriot failed to produce her retainer agreement with the Javier Firm. R. Doc. No. 68-4, at 5–6. Defendants reason that this retainer agreement is the only way to determine whether the Javier Firm represented the Estate or just Theriot in her personal capacity, and without it, the Court cannot conclude that the Javier Firm was requesting documents on behalf of the Estate. *Id.* The Javier Firm's letter to defendants confirms that it represented, or at least purported to represent, "the interests of the estate of Ms. Audry Hamann, and also Debbie Theriot and [Theriot's brother]." R. Doc. No. 85-7, at 1. Whether the Javier Firm technically represented the Estate or solely Theriot in her personal capacity is ultimately irrelevant, however, as defendants fully complied with the 2017 request for documents, as explained herein.

### 4. Tolling of Limitations

Finally, Theriot argues that "consideration of [p]laintiff's claims should have been tolled until such time as a succession representative qualified or until such time as [d]efendants produced the plan documents giving rise to the Audry Hamann claim."[62] She further argues, "[a]ssuming arguendo that the Court accepts [d]efendants' argument, the running of the time limitations for administrative review should have been equitably tolled until Audry Hamann [sic] officially became estate administrator."[63]

Theriot's argument is inapposite and completely irrelevant as to whether she had authority to represent the Estate on November 1, 2017 and, therefore, had standing to make the 2017 request. There was no time restriction on when Theriot could request documents once appointed the independent administrator of the Estate, because neither the 2017 Plan nor 29 U.S.C. § 1024(b)(4) impose a time limit on requesting documents.[64] Therefore, Theriot's argument is immaterial to the Court's decision.

---

[62] R. Doc. No. 106, at 2.
[63] *Id.*
[64] Theriot cites *Branch v. G. Bernd Co.*, 955 F.2d 1574, 1582 (11th Cir. 1992) in support. *Branch* is inapposite to the issue here because in *Branch*, there was a time limit that had expired which the court could toll to allow the administrator of the estate to elect continuing coverage for the deceased beneficiary. *See id.*

### 5. Defendants did not violate 29 U.S.C. § 1024(b)(4)

Theriot, through the Javier Firm, had standing to request documents pursuant to 29 U.S.C. § 1024(b)(4) on November 1, 2017, because she was acting on behalf of the Estate. The next issue is whether defendants complied with Theriot's 2017 request. The Javier Firm's letter requested:

> [A] complete copy of the plan agreement including [Ms. Hamann's] application and all other correspondence from her to the Fund. I am particularly interested in reviewing any language which states that once a beneficiary elects a lump sum payment, irrespective of the fact that the Fund may process this request at its leisure, once it processes same and elects to make payment, the beneficiary must be alive.[65]

Defendants sent the Javier Firm a copy of the plan agreement current through 2017 (the "2017 Plan") in response to the request.[66] Theriot argues that defendants should have known she was also requesting the 1990 plan document, summary plan description, and collective bargaining agreement.[67]

A claimant does not have to request a document under § 1024(b)(4) using its precise name, but the request must be "sufficiently clear" to provide "notice to the plan administrator of the information" the claimant desires. *Van Bael*, 2019 WL 160183, at *3; *see also Center for Restorative Breast Surgery*, 2015 WL 4394034, at *17. However, Theriot's request did not "provide clear notice to [defendants]" such that a reasonable plan administrator would have known Theriot was also requesting the summary plan description, 1990 plan document, and collective bargaining

---

[65] *Id.* at 2.
[66] R. Doc. No. 68-8, at 2.
[67] R. Doc. No. 85, at 10–14.

agreement. *See Van Bael*, 2019 WL 160183, at *3; *Center for Restorative Breast Surgery*, 2015 WL 4394034, at *17. The Javier Firm's letter requested a complete copy of the plan agreement and defendants fulfilled this request by producing the 2017 Plan.[68]

## C. 2018 Requests

On November 2, 2018, Theriot's current counsel sent a letter[69] to defendants requesting:

> "[R]ecords evidencing adoption of the plan and any amendments in force as of the date of Mr. Hamann's death in December 2016, as well as those in effect on the date of Audrey [sic] Hamann's request for payment of the survivor benefit in a lump sum. To be complete, please forward to us at your earliest convenience, all documents regarding the pension rights of Robert A. Hamann, including the following:
>
> • a complete copy of the Plan Document, applicable amendments and all records evidencing adoption of same, in effect as of December 30, 2016 and March 1, 2017
> • the Trust agreement (if any)
> • any Fidelity bond issued to The Building Trades United Pension Trust Fund
> • any Errors and Omissions or Fiduciary Policy issued to The Building Trades United Pension Trust Fund in force as of the dates listed above
> • a Certificate of Coverage evidencing the benefits to which Mr. and Mrs. Hamann were entitled as of the dates listed above
> • the Summary Plan Description in effect as of the above dates
> • Forms 5500 and attachments, including supporting documentation, for the years 2016 and 2017
> • Summary Annual Reports (if required for the Plan) for the years 2016 and 2017
> • List of all contacts related to the plan's operations and copies of the same, including a copy of any signed contract between the employer and the third party

---

[68] *See* R. Doc. No. 106, at 2; R. Doc. No. 68-8, at 2. Theriot does not argue that defendants did not produce or should have produced correspondences between Ms. Hamann and the Fund.

[69] R. Doc. No. 20-3.

- Open enrollment materials, including documents describing cost responsibilities for the employer and employees
- Mrs. Hamann's applications as survivor beneficiary for payment and her "change form" election to receive the lump sum payment, together with any correspondence or emails or other documents related to it
- Any other administrative records evidencing the handling of Ms. Hamann's claims
- All documents relevant to Mrs. Hamann's claims for pension benefits arising out of the death of her husband Robert Hamann, as defined by 29 C.F.R. § 2560.503-1
- Any contracts for claims administration existing between The Fund as plan sponsor and any third party
- Any contracts for preparation of the summary plan description or plan contract documents with any third party

After not hearing from defendants, Theriot's counsel sent another letter on December 19, 2018, requesting all of the same documents.[70] In response to Theriot's second letter, defendants produced the 2017 Plan, Trust Agreement, summary plan description in effect on the dates listed, and forms 5500 and attachments for years 2016–17.[71]

Defendants argue that the Estate did not have standing to make the 2018 requests because the "Estate had failed to exhaust available administrative procedures and was barred from challenging [defendants'] benefit denial decision long before November 2, 2018."[72] Defendants argue that because this Court held in its order and reasons granting defendants' motion to dismiss that the March 2, 2018 benefit denial letter substantially complied with ERISA, the Estate could not have had a colorable claim for benefits on November 2, 2018, when the time to appeal the

---

[70] R. Doc. No. 20-4.
[71] R. Doc. No. 68-8, at 2; R. Doc. No. 85-2, at 13.
[72] R. Doc. No. 68-4, at 7.

adverse benefits determination had already expired.[73] Therefore, defendants argue, Theriot, acting on behalf of the Estate, did not have standing to request documents pursuant to § 1024(b)(4) in November and December of 2018.

Theriot argues that defendants failed to produce, in violation of § 1024(b)(4): (1) the 1990 Plan document; (2) the collective bargaining agreement; (3) contracts for claims administration; (4) the fidelity bond; and (5) any errors and omissions policy or fiduciary policy.[74] Theriot further argues that defendants' refusal to provide these documents was in bad faith and prejudiced Theriot and, therefore, the Court should award penalties under 29 U.S.C. § 1132(c).[75] It is unnecessary to resolve this issue because, even assuming Theriot had standing to request documents on behalf of the Estate in November and December of 2018, defendants complied with § 1024(b)(4).

Defendants may only be subject to statutory penalties for those documents that were clearly requested and whose production 29 U.S.C. § 1024(b)(4) requires.[76] *See Van Bael*, 2019 WL 160183, at *3. These documents include "the latest updated

---

[73] *Id.* at 10.

[74] R. Doc. No. 85, at 14–18. In her response to defendants' interrogatories, Theriot lists additional documents that she claims should have been produced in response to the 2018 requests. R. Doc. No. 68-8, at 2. However, because Theriot does not argue in her opposition to defendants' motion for summary judgment that defendants should have produced these additional documents, the Court will not address them.

[75] R. Doc. No. 85, at 18–22.

[76] Although the Fifth Circuit has not squarely decided the issue, Theriot does not dispute that only violations of the statute, 29 U.S.C. § 1024(b)(4), can give rise to statutory penalties. *See Elite Ctr. for Minimally Invasive Surgery, LLC v. Health Care Service Co.*, 221 F. Supp. 3d 853, 859 (S.D. Tex. 2016) ("While the Fifth Circuit has not yet considered the precise issue . . . the First, Second, Third, Sixth, Seventh, Eight, Ninth, and Tenth Circuits have all agreed that the failure to follow [ERISA regulations] does not give rise to a statutory penalty claim under [ERISA] § 502(c) [codified at 29 U.S.C. § 1132(c)].") (collecting cases).

summary plan description . . . the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). The Court will address each of the documents Theriot claims defendants should have produced in turn.

### 1. 1990 Plan Document and Collective Bargaining Agreement

Theriot argues that defendants should have produced the 1990 plan document because it "governed Mr. Hamann's non-forfeitable rights at the time of his retirement[.]"[77] Theriot also argues that defendants should have produced the collective bargaining agreement because "29 U.S.C. § 1024(b)(4) lists the collective bargaining agreement as a document that plan administrators must produce upon request."[78]

As previously discussed, a claimant does not have to request a document under § 1024(b)(4) using its precise name, but the request must be "sufficiently clear" to provide "notice to the plan administrator of the information" the claimant desires. *Van Bael*, 2019 WL 160183, at *3. Theriot's request falls short of this notice requirement. Theriot does not even identify which provisions in her requests would include the 1990 plan document and collective bargaining agreement. Therefore, the Court finds that defendants did not violate § 1024(b)(4) by failing to produce the 1990 plan document or collective bargaining agreement.

---

[77] R. Doc. No. 85, at 14.
[78] R. Doc. No. 85, at 13.

Even if Theriot's request for "a complete copy of the Plan Document, applicable amendments and all records evidencing adoption of same, in effect as of December 30, 2016 and as of March 1, 2017" could be construed as requesting the 1990 plan document, Theriot still would not have been entitled to it under § 1024(b)(4).

Theriot cites *Hartman v. Dana Holding Corp.*, 978 F. Supp. 2d 957, 968 (N.D. Ind. 2013), which held that an ERISA claimant may be entitled to outdated plan documents "if they contain information necessary for her to understand and assert her rights under the plan." The court in that case reasoned that a claimant may be entitled to outdated plan documents when "a claims administrator expressly relied on such documents because, under those circumstances, the participant would need to 'have access to [the outdated documents] in order to understand what the claim administrator [was] doing and to effectively assert his rights under the plan.'" *Id.* (quoting *Mondry v. American Family Mut. Ins. Co.*, 557 F.3d 781, 800 (7th Cir. 2009)).

Here, defendants relied upon language in the current plan agreement, the 2017 Plan, to deny Theriot's claim for benefits[79] and, therefore, Theriot did not need access to the 1990 plan document to "understand what the claim administrator [was] doing and to effectively assert [her] rights under the plan." *Id.* Further, defendants essentially build upon old plan documents when creating new plan documents, so all

---

[79] R. Doc. No. 68-4, at 12. Defendants cite R. Doc. No. 10-8, defendants' letter dated March 2, 2018 to Theriot's counsel, in support of their argument that they used the 2017 Plan and not the 1990 plan document when administering Theriot's claim. The letter refers to the provisions of "the Plan" that defendants relied on to deny Theriot's claim. *Id.* Theriot does not dispute that "the Plan" referenced in the March 2, 2018 letter was referring to the 2017 Plan.

previous provisions are incorporated into the current plan document. According to Michael Gantert, director of the Fund, "when the . . . Fund adopts an amendment, the previous version of the Plan language . . . still appl[ies] to participants who retired before the effective date of the amendment. Therefore, previous versions of the [Plan's] language [are] retained in the . . . Fund's [current] plan document with an added note on the language's effective date(s)[.]"[80] Theriot, therefore, had all of the relevant provisions that would have been in effect in 1990 when Mr. Hamann retired because she had a copy of the 2017 Plan. The Court finds that § 1024(b)(4) would not have required defendants to produce the 1990 plan document, even if Theriot had clearly requested it.

## 2. Contracts for Claims Administration

Theriot clearly requested in her 2018 requests "[a]ny contracts for claim administration existing between [t]he Fund as plan sponsor and any third party."[81] Contracts for claim administration are not specifically enumerated in 29 U.S.C. § 1024(b)(4) and, therefore, defendants were only required to produce the contracts if the contracts were "other instruments under which the plan is established or operated." *See* 29 U.S.C. § 1024(b)(4).

Theriot argues that contracts for claims administration are other instruments under which the plan is operated because "[a]ny contract by which a person or party involves itself in the administration of claims is a document that governs the

---

[80] R. Doc. No. 68-5, at ¶ 4.
[81] R. Doc. No. 20-3, at 2; R. Doc. No. 20-4, at 2.

operation of the Fund, and may result in that third party being considered a fiduciary under the plan."[82]

Defendants argue in response that no contracts for claims administration exist because the Fund is self-administered by its own employees.[83] Theriot does not allege or have any evidence that Gantert's declaration that no claims administration contracts exist is false. Therefore, because the summary judgment evidence shows that no contracts for claims administration existed, defendants had no obligation to produce them.[84]

### 3. Fidelity Bond

Theriot clearly requested in her 2018 requests "any Fidelity bond issued to [the Fund]."[85] Fidelity bonds are not specifically enumerated in § 1024(b)(4), and therefore, again, defendants were only required to produce the bond if the bond was an "other instrument[] under which the plan is established or operated." *See* 29 U.S.C. § 1024(b)(4); *see Murphy v. Verizon Communications, Inc.*, 587 F. App'x 140, 144 (5th Cir. 2014) (agreeing with the majority of circuits that "have construed Section

---

[82] R. Doc. No. 85, at 16.

[83] R. Doc. No. 68-4, at 14 (citing R. Doc. No. 68-5, at ¶ 15).

[84] Theriot seems to conflate defendants' arguments that they were not required to produce "contracts related to the plan's operations including a copy of any signed contract between the employer and the third party" with defendants' arguments as to why contracts for claims administration were not produced. *See* R. Doc. No. 62-3, at 15–17; R. Doc. No. 85, at 16. However, even liberally construing Theriot's "contracts for claims administration" argument as also including "contracts related to the plan's operations including a copy of any signed contract between the employer and the third party," Theriot is not entitled to statutory penalties, as explained herein.

[85] R. Doc. No. 20-3, at 1; R. Doc. No. 20-4, at 1.

[1024(b)(4)]'s catch-all provision narrowly so as to apply only to formal legal documents that govern a plan").

Theriot cites 29 U.S.C. § 1112, which requires every fiduciary of an employee benefit plan and every person who handles funds or other property of an employee benefit plan to be bonded, and concludes that "[b]ecause this document is a requirement for [d]efendants to operate as plan fiduciaries, it is an instrument under which the plan is established or operated that [d]efendants must produce."[86]

Defendants do not address Theriot's request for "any Fidelity bond" in their motion for summary judgment, but asserted in their letter to Theriot's counsel on January 4, 2019 that any fidelity bond issued to the fund is not an instrument under which the Fund is established or operated, and therefore outside the scope of 29 U.S.C. § 1024(b)(4).[87]

The Fourth Circuit, which also agrees with the majority of circuits and construes § 1024(b)(4)'s catch-all provision narrowly, was confronted with this same question in *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 654 (4th Cir. 1996). The court held that § 1024(b)(4) did not encompass the bonding policy insuring the plan against fiduciary misconduct because "the bond policy does nothing to set up or manage the [plan]."[88] *Id.* The Court agrees. However, even if § 1024(b)(4)

---

[86] R. Doc. No. 85, at 17.
[87] R. Doc. No. 68-5, at 10.
[88] Judge Michael dissented on this point, reasoning that because ERISA requires plan fiduciaries to be bonded and the plan cannot operate without fiduciaries, the plan cannot operate without some sort of bonding policy. *See Faircloth*, 91 F.3d at 664 (Michael, J., dissenting). Therefore, Judge Michael concluded, the bonding policy is

encompassed any fidelity bond issued to the Fund, Theriot would still not be entitled to penalties under § 1132(c), as discussed herein.

### 4. Any Errors and Omissions Policy or Fiduciary Policy

Theriot clearly requested in her 2018 requests "any Errors and Omissions or Fiduciary Policy issued to [the Fund] in force as of the dates listed above."[89] Errors and omissions and/or fiduciary policies are not specifically enumerated in § 1024(b)(4) and, therefore, defendants were only required to produce such policies if they were "other instruments under which the plan is established or operated." *See* 29 U.S.C. § 1024(b)(4).

Theriot argues that defendants should have produced any errors and omissions or fiduciary policies issued to the Fund because "these are formal legal documents that govern the plan's operations[.]"[90] Defendants argue in response that "any contracts that merely address whether it is an individual trustee or an insurance company that pays when a trustee breaches his or her fiduciary duty to the Pension Fund, such as the Pension Fund's fiduciary policy, do not govern the Pension Fund's operations."[91]

29 U.S.C. § 1110 permits "a plan [to] purchas[e] insurance for its fiduciaries or for itself to cover liability or losses occurring by reason of the act or omission of a fiduciary, if such insurance permits recourse by the insurer against the fiduciary in

---

"an instrument under which the Plan is 'operated' because the policy is indispensable to the operation of the plan." *Id.*
[89] R. Doc. No. 20-3, at 1; R. Doc. No. 20-4, at 1.
[90] R. Doc. No. 85, at 18.
[91] R. Doc. No. 68-4, at 17.

the case of a breach of a fiduciary obligation by such fiduciary[.]" Theriot provides no support for the claim that errors and omissions or fiduciary policies are "other instruments under which the plan is established or operated," and the Court finds no support for the argument that § 1024(b)(4) encompasses such policies. Therefore, defendants did not violate § 1024(b)(4) by failing to produce any errors and omissions or fiduciary policies issued to the Fund.

### D. Statutory Penalties

Even if Theriot was entitled to some or all of her requested documents pursuant to § 1024(b)(4), the Court would still not exercise its discretion to award statutory penalties. Any administrator who fails or refuses to comply with §1024(b)(4) may, within the court's discretion, be held personally liable to the requesting party for up to $100 for each day after the date of refusal. § 1132(c)(1)(B). *See Kidder v. Aetna Life Ins. Co.*, No. 14-665, 2016 WL 1241549, at *9 (W.D. Tex. Mar. 28, 2016) (citing *Paris v. Profit Sharing Plan for Emp. of Howard B. Wolf Inc.*, 637 F.2d 357, 362 (5th Cir. 1981)) ("The imposition of a statutory penalty [for violations of § 1024(b)(4)] is within the discretion of the district court."). "As a penalty provision section 1132(c) must be strictly construed." *Fisher,* 895 F.2d at 1077 (citing *Ivan Allen Co. v. United States*, 422 U.S. 617, 626–27 (1975)).

Although not statutorily required, courts in the Fifth Circuit typically do not award penalties under 29 U.S.C. § 1132(c) unless the claimant shows that the administrator acted in bad faith by withholding the documents or that the claimant was prejudiced in pursuing her claim by not having the requested documents. *See*

*Godwin v. Sun Life Assur. Co. of Canada*, 980 F.2d 323, 327 (5th Cir. 1992) (holding that "prejudice is one factor a district court may consider in exercising its discretion"); *Keaton v. Sedgwick Claims Management Services, Inc.*, No. 17-223, 2018 WL 2027747, at *10 (W.D. Tex. Apr. 30, 2018) (listing bad faith by the administrator and the existence of any prejudice to the plan participant as factors courts consider when deciding whether to award statutory penalties); *Kidder*, 2016 WL 1241549, at *10 ("Courts in the Fifth Circuit regularly deny a request for penalty damages when the plaintiff does not allege bad faith by the defendant or show that it has been somehow prejudiced."); *Mouton v. Mobil*, No. 00-1403, 2001 WL 963957, at *11 (S.D. Tex. June 18, 2001) (denying a request for statutory penalties because the administrator's failure to send requested documents was inadvertent and not in bad faith).

In *Kidder*, the claimant specifically asked for a document enumerated in § 1024(b)(4), and the administrator failed to produce it. 2016 WL 1241549, at *9. However, because the request was sent more than a year after the claimant's deadline to file a second appeal had expired, and the claimant alleged no other facts that indicated the existence of prejudice to him in preparing for the lawsuit or bad faith on the part of the administrator, the court declined to award statutory penalties. *Id.* at *10. The court also found it relevant that the document requested would not have offered the claimant a more detailed explanation as to why his benefits were denied. *Id.*

Similarly, here, Theriot requested documents well after her deadline to appeal had passed. Theriot had sixty days from March 2, 2018, to appeal the adverse benefit

determination, but did not request the documents until November 2, 2018.[92] The documents she claims defendants should have produced would not have offered her a more detailed explanation as to why her benefits were denied, as she received a substantially compliant benefit denial letter on March 2, 2018 that cited the 2017 Plan provisions defendants relied upon in making their decision and the reasoning for such decision.[93]

Furthermore, Theriot fails to provide any evidence of bad faith on the part of defendants beyond mere conclusory allegations.[94] *See Keaton*, 2018 WL 2027747, at *11 (holding that the claimant did not show that the administrator acted in bad faith because the claimant failed to provide any evidence and merely claimed that the administrator's failure to provide documents sooner showed a "reckless, if not deliberate indifference to its responsibilities").

---

[92] R. Doc. No. 20-3; *see* R. Doc. No. 51, at 23, 29.

[93] R. Doc. No. 10-8; *see* R. Doc. No. 51, at 25–26. Theriot argues at great length as to why defendants should have produced the collective bargaining agreement. *See* R. Doc. No. 85, at 20–22. However, as discussed previously, Theriot never clearly requested the collective bargaining agreement in her 2018 requests.

[94] For example, Theriot argues, without evidence in support, that "[d]efendants have purposely delayed producing, or even indicating the existence of, crucial documents until after [p]laintiff could use them to support her claims. Therefore, [d]efendants acted in bad faith in failing to produce documents required under § 1024(b)(4)[.]" R. Doc. No. 85, at 19.

**IV.**

For the foregoing reasons,

**IT IS ORDERED** that the motion for summary judgment is **GRANTED** and that count III of Theriot's second amended complaint against the Fund and Trustees is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, November 4, 2019.

                        **LANCE M. AFRICK**
                  **UNITED STATES DISTRICT JUDGE**