UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DEBORAH THERIOT | CIVIL ACTION |
| VERSUS | No. 18-10250 |
| BUILDING TRADES UNITED PENSION TRUST FUND, ET AL. | SECTION I |

### ORDER & REASONS

Before the Court is plaintiff Deborah Theriot's ("Theriot") motion[1] for reconsideration. Theriot requests that the Court reconsider and reverse its orders[2] granting defendant Building Trades United Pension Trust Fund's (the "Fund") motion to dismiss and motion for summary judgment. The Fund seeks attorneys' fees in connection with opposing the instant motion.[3] For the following reasons, Theriot's motion is denied, but the Court declines to exercise its discretion to award attorneys' fees.

The Court assumes familiarity with the factual background of the case. *See Theriot v. Building Trades United Pension Trust Fund*, 394 F. Supp. 3d 597 (E.D. La. 2019) (granting motion to dismiss); *Theriot v. Building Trades United Pension Trust Fund*, No. 18-10250, 2019 WL 5693045 (E.D. La. Nov. 4, 2019) (granting summary judgment).

---

[1] R. Doc. No. 120.
[2] R. Doc. Nos. 51, 114.
[3] R. Doc. No. 121, at 16–17.

**I.**

The Federal Rules of Civil Procedure do not expressly recognize motions for reconsideration. *Bass v. U.S. Dep't of Agric.*, 211 F.3d 959, 962 (5th Cir. 2000). The question of which procedural rule applies depends on the timing of such a motion. *Sentry Select Ins. Co. v. Home State Cty. Mut. Ins. Co.*, 582 F. App'x 284, 286 (5th Cir. 2014) (citation omitted). A motion for reconsideration filed within twenty-eight days of the district court judgment being challenged is characterized as a motion to alter or amend the judgment and construed pursuant to Rule 59(e). *See id.* A motion for reconsideration filed more than twenty-eight days after the judgment is treated as a Rule 60(b) motion for relief from judgment. *See id.* Theriot filed this motion on December 2, 2019, within twenty-eight days of the entry of final judgment.[4] Accordingly, a Rule 59(e) analysis is appropriate.

A motion pursuant to Rule 59(e) "calls into question the correctness of a judgment." *Allen v. Envirogreen Landscape Professionals, Inc.*, 721 F. App'x 322, 328 (5th Cir. 2017) (citations omitted). "Rule 59(e) 'serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly

---

[4] Theriot filed the instant motion on December 2, 2019, exactly twenty-eight days after the entry of final judgment. *See* R. Doc. Nos. 115, 119. The motion was marked as deficient by the United States District Court for the Eastern District of Louisiana Clerk's Office. Theriot successfully refiled her motion on December 3, 2019, within the seven days allowed by the Clerk's Office to correct any deficiency before such motion is stricken from the record. *See* R. Doc. No. 120. The Court considers December 2, 2019 as the filing date for the purpose of determining which procedural rule applies, which is consistent with the practice of the Clerk's Office of considering the date of the deficient filing of a subsequently corrected motion to be the proper filing date with respect to issues of timeliness. Both parties also agree that Rule 59(e) applies. *See* R. Doc. No. 120-3, at 2; R. Doc. No. 121, at 3.

discovered evidence.'" *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir.1989)). Thus, "[a] motion to alter or amend the judgment under Rule 59(e) must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued." *In re Life Partners Holdings, Inc.*, 926 F.3d 103, 128 (5th Cir. 2019) (citations and internal quotation marks omitted). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Koerner v. CMR Construction & Roofing, L.L.C.*, 910 F.3d 221, 226 (5th Cir. 2018) (quoting *Templet*, 367 F.3d at 479).

## II.

The Court granted the Fund's motion[5] to dismiss as to counts one, two, four, and five of Theriot's second amended complaint on July 17, 2019.[6] Theriot filed a motion[7] to reconsider the Court's order on August 27, 2019, which the Court denied.[8] The Court granted summary judgment as to count three in favor of the Fund on November 4, 2019.[9]

The Court will not reconsider its order dismissing counts one, two, four, and five of Theriot's second amended complaint for the second time, as Theriot has presented no new evidence or demonstrated a manifest error of law or fact that would

---

[5] R. Doc. No. 10.
[6] R. Doc. No. 51.
[7] R. Doc. No. 74.
[8] R. Doc. No. 100.
[9] R. Doc. Nos. 114, 115.

3

compel the Court to reverse its prior ruling. *See Templet*, 367 F.3d at 479. Accordingly, the Court will only consider the instant motion as it pertains to the Court's grant of summary judgment as to count three of Theriot's second amended complaint.

The Court will also not consider any arguments that Theriot raises for the first time in the instant motion. *See Schiller*, 342 F.3d at 568.

### III.

Count three of Theriot's second amended complaint alleges that the Fund, through its Board of Trustees (the "Board"), failed to timely produce requested plan documents in violation of ERISA, 29 U.S.C. § 1024(b)(4) and that, therefore, Theriot is entitled to penalties under 29 U.S.C. § 1132(c).[10]

Theriot only challenges the Court's order as it pertains to whether she should be awarded statutory penalties for the Fund's failure to produce the 1990 collective bargaining agreement. Theriot argues that the Court should reconsider its decision for three primary reasons: (1) Theriot's November 2, 2018 letter clearly requested the 1990 collective bargaining agreement[11]; (2) the Court should have considered other forms of prejudice suffered by Theriot due to the Fund's failure to produce the 1990 collective bargaining agreement, such as her frustration, trouble, and expense in trying to obtain the document[12]; and (3) the Fund's communications with Robert Hamann's ("Hamann") union constitute new evidence that demonstrates that the

---

[10] R. Doc. No. 44, at ¶¶ 28–29.
[11] R. Doc. No. 120-3, at 10–12.
[12] *Id.* at 12–14.

4

Fund acted in bad faith when it failed to produce the 1990 collective bargaining agreement in response to Theriot's requests.[13]

### A.

Theriot first argues that she gave the Fund clear notice that she sought the collective bargaining agreement by which Hamann participated in the plan—that is, the 1990 collective bargaining agreement.[14]

On November 2, 2018, Theriot's counsel sent a letter to the Fund requesting, in pertinent part,

> [R]ecords evidencing adoption of the plan and any amendments in force as of the date of Mr. Hamann's death in December 2016, as well as those in effect on the date of Audrey Hamann's request for payment of the survivor benefit in a lump sum. . . . [and] all documents regarding the pension rights of Robert A. Hamann, including the following . . . *[a] [l]ist of all contracts related to the plan's operations and copies of same, including a copy of any signed contract between the employer and the third party*[.][15]

The Fund argues that a reasonable plan administrator would not have understood a request for a "copy of any signed contract between the employer and the third party" that is "related to the plan's operations" to include the 1990 collective bargaining agreement, because such agreement is not related to the Fund's operations and Hamann's union is not a third party.[16]

---

[13] *Id.* at 3–5.
[14] *Id.* at 11.
[15] R. Doc. No. 20-3, at 1–2 (emphasis added). After not receiving a response from the Fund, Theriot's counsel sent an identical request on December 19, 2018. R. Doc. No. 20-4. In response to Theriot's second letter, the Fund produced several documents, but not the 1990 collective bargaining agreement. R. Doc. No. 68-8, at 2; R. Doc. No. 85-2, at 13.
[16] R. Doc. No. 121, at 13–14.

5

*i.*

Pursuant to 29 U.S.C. § 1024(b)(4), plan administrators must, "upon written request of any participant or beneficiary, furnish a copy of the latest updated summary[] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."

29 U.S.C. § 1132(c) gives courts discretion to award penalty damages for violations of § 1024(b)(4):

> "Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal[.]"

The Fifth Circuit construes ERISA's penalty provision strictly. *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1077 (5th Cir. 1990). The decision to grant or deny a request for penalties is within the Court's discretion. *See Abraham v. Exxon Corp.*, 85 F.3d 1126, 1132 (5th Cir. 1996).

A claimant does not have to request a document under 29 U.S.C. § 1024(b)(4) using its precise name, but the request must be sufficiently clear to "provide clear notice to the plan administrator of the information" the claimant desires. *Van Bael v. United Healthcare Services, Inc.*, No. 18-6873, 2019 WL 160183, at *3 (E.D. La. Jan. 10, 2019) (Africk, J.) (quoting *Kollman v. Hewitt Assocs.*, LLC, 487 F.3d 139, 145 (3d Cir. 2007) (citations omitted). The "touchstone" of sufficiency "is whether the request provides the necessary clear notice to a reasonable plan administrator which, given

6

the context of the request, should be provided." *Center for Restorative Breast Surgery, LLC v. Humana Health Benefit Plan of La., Inc.*, No. 10-4346, 2015 WL 4394034, at *17 (E.D. La. July 15, 2015) (Fallon, J.) (quoting *Kollman*, 487 F.3d at 146; citing *Fisher*, 895 F.2d at 1077).

Whether a request gave the plan administrator clear notice of the document sought "depend[s] upon the circumstances of th[e] case and no general rule can be formulated." *Kollman*, 487 F.3d at 145. The Court must look to whether "either the request or the response indicates that [the plan administrator] knew or should have known that [the participant or beneficiary] had requested a copy of" the document sought. *Fisher*, 895 F.2d at 1077.

Requests that are ambiguous, taking into account the context of prior communications between the plan administrator and participant or beneficiary, do not satisfy the "clear notice" test. For example, the Third Circuit held that a request for "[a]ll documents of any nature which relate, reflect or refer [to] the . . . adjustment to [plaintiff's] benefits" did not give the plan administrator clear notice that the plaintiff sought the plan and summary plan description. *Kollman*, 487 F.3d at 146. Prior communications between the plan administrator and the plaintiff "signaled only [the plaintiff]'s interest in the calculation of his own benefits," and neither the plan nor the summary plan description provided any information in regard to such calculation. *Id.*; *see also Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 555–56 (6th Cir. 2012) (holding that a request for "plan documents" did not provide clear notice that plaintiffs also sought actuarial valuation reports because the fund could have

7

reasonably concluded, based on established Sixth Circuit precedent that such reports must be furnished upon request, that had plaintiffs wanted the reports they would have requested them by name).

Likewise, the Fifth Circuit has held that a scribbled note at the bottom of a Social Security award certificate requesting "a copy of the policies covering [the plaintiff's] contract for salary continuation" did not give the plan administrator clear notice that the plaintiff sought a copy of the plan description. *Fisher*, 895 F.2d at 1077; *see also Van Bael*, No. 18-6873, 2019 WL 160183, at \*3 (holding that the plaintiff's request for a copy of her "health insurance policy" did not give the plan administrator clear notice that she sought the plan document).

On the other hand, "the failure to request a specific document by name does not justify withholding the document when it 'so obviously contains the information' described in the request that the administrator either knows or should know that it was obliged to produce it." *Cataldo*, 676 F.3d at 555 (quoting *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1071 (6th Cir. 1994)); *see also Anderson v. Flexel, Inc.*, 47 F.3d 243, 250 (7th Cir. 1995) (holding that the plan administrator knew or should have known that a request for "any group life insurance that [the beneficiary] might have had" included the beneficiary designation forms and policy handbook).

*ii.*

Theriot argues that "[a]ny reasonable plan administrator, particularly the administrator of a plan whose membership consists solely of employees participating through collective bargaining agreements, should have understood [her] request" for

8

a "copy of any signed contract between the employer and the third party" that is "related to the plan's operations" to include the 1990 collective bargaining agreement.[17] Theriot reasons that the 1990 collective bargaining agreement is plainly a "signed contract between the employer and [a] third party" related to the operation of the plan because collective bargaining agreements "form the entire basis of the plan's membership."[18]

The Fund argues in response that Theriot's request was not sufficiently clear because the collective bargaining agreement is not related to the Fund's operations and Hamann's union is not a third party.[19] Therefore, the Fund contends, a reasonable plan administrator would not have interpreted Theriot's request to include the 1990 collective bargaining agreement.[20]

According to Michael Gantert ("Gantert"), the Fund director,[21] the Fund's collective bargaining agreements reflect the results of negotiations between unions and employers as to how much employers must contribute financially to the Fund.[22] The Fund's collective bargaining agreements do not govern the relationship between the Fund and its participants and beneficiaries, the employers' covered employees, because employers that sign the agreements—such as Hamann's employer—become

---

[17] R. Doc. No. 120-3, at 11–12.
[18] *Id.* at 12.
[19] R. Doc. No. 121, at 13–14.
[20] *Id.*
[21] R. Doc. No. 85-9, at 5–6.
[22] R. Doc. No. 62-4, at 5 ¶ 17.

9

bound to the Fund's Trust Agreement.[23] It is the Trust Agreement—*not* the collective bargaining agreement—that binds the parties and gives the Board the authority to require financial contributions from signatory employers.[24] Collective bargaining agreements also do not govern the Board's responsibility to administer the Fund, as the Trust Agreement and Plan Document are the only two documents that govern such responsibility.[25]

The collective bargaining agreement also only provides the procedures by which unions and employers may settle disputes between each other.[26] The procedures by which participants and beneficiaries can make claims for benefits and the Fund's handling of such claims are outlined in the Plan Document.[27]

The Court finds that the Fund's failure to interpret "any signed contract between the employer and the third party" that is "related to the plan's operations" as including the 1990 collective bargaining agreement to be reasonable, given the fact that such an agreement has no effect on the Board's operation of the Fund as it relates to processing participants' and beneficiaries' claims for benefits. The agreement only relates to the plan's funding insofar as it represents the initial agreement as to Hamann's employer's financial contributions to the Fund.

---

[23] R. Doc. No. 121, at 13 (citing R. Doc. No. 85-9, at 17–18). Theriot is in possession of the Trust Agreement. R. Doc. No. 68-8 at 2; R. Doc. No. 85-2, at 13.
[24] R. Doc. No. 62-4, at 5 ¶ 17.
[25] *Id.* at 5 ¶ 16.
[26] *Id.*
[27] *Id.* at 5 ¶ 17.

The context and purpose of Theriot's prior communications with the Fund—to gather plan documents that would aid in determining whether she was entitled to Mrs. Hamann's lump-sum payout—could have led the Fund to reasonably conclude that Theriot was not requesting the 1990 collective bargaining agreement because the agreement does not relate to any plan provision or policy that would resolve the question of whether the Fund correctly determined that Theriot was not entitled to her mother's benefits under the plan. *See Kollman*, 487 F.3d at 146.

Furthermore, the Fund could have also reasonably concluded that had Theriot sought the 1990 collective bargaining agreement, she would have requested it by name, given that she requested other documents listed in 29 U.S.C. § 1024(b)(4) by name, such as the summary plan description, trust agreement, and annual reports.[28] *See Cataldo*, 676 F.3d at 555–56.

Theriot's request did not provide "the necessary clear notice" so that the Fund should have known that it was obligated to produce the 1990 collective bargaining agreement. *Center for Restorative Breast Surgery,* No. 10-4346, 2015 WL 4394034, at *17; *Cataldo*, 676 F.3d at 555. Accordingly, the Court need not address Theriot's arguments as to why statutory penalties should be awarded.

---

[28] R. Doc. No. 20-3, at 1–2. Having concluded that Theriot's request did not provide clear notice to the Fund, the Court need not address the Fund's argument that the request was unclear because Hamann's union is not a third party. *See* R. Doc. No. 121, at 14 (citing R. Doc. No. 62-4, at 2 ¶ 6).

11

**B.**

The Court will briefly address Theriot's argument that the Court should not have granted the Fund's motion for summary judgment until the Fund produced the 1990 collective bargaining agreement because the Fund's failure to produce such document "deprived her of the ability to combat" the Fund's motion.[29]

On May 24, 2019, Theriot propounded discovery requests on the Fund, requesting, among other documents, "all contracts or agreements between the Fund or its Board of Trustees and Robert Hamann's immediate employer and/or the union by which Robert Hamann was extended the right to become a participant in the Plan."[30] The Fund responded to such request on June 24, 2019, and objected on the grounds that such request was irrelevant and unlikely to lead to the discovery of relevant evidence, the Fund "does not dispute [that] Robert Hamann was an eligible participant under the Plan," and "Mr. Hamann's right to benefits from the . . . Fund is governed by the . . . Fund's governing documents rather than a collective bargaining agreement."[31]

On August 8, 2019, Theriot deposed Gantert and confirmed that he possessed the 1990 collective bargaining agreement.[32] The discovery period closed four days

---

[29] R. Doc. No. 120-3, at 9. The Court has already considered and dismissed Theriot's argument that the Fund's failure to produce certain documents during discovery before the Court ruled on the Fund's motion to dismiss prejudiced Theriot. *See* R. Doc. No. 100, at 37–38, 45–46. The Court will not consider this argument again for the second time.
[30] R. Doc. No. 74-3, at 12.
[31] *Id.*
[32] R. Doc. No. 120-3, at 7–8.

later on August 12, 2019.[33] Theriot filed a motion[34] to compel certain documents, including the 1990 collective bargaining agreement, on August 20, 2019, which the United States Magistrate Judge denied as untimely.[35]

Theriot provides no explanation as to why she did not file a motion to compel the 1990 collective bargaining agreement at any time between June 24, 2019 and August 12, 2019. Furthermore, Theriot failed to ever address the untimeliness of her motion to compel or explain why, assuming she was unaware that the Fund possessed the 1990 collective bargaining agreement until after Gantert's deposition, she did not file a motion to compel during the four days between Gantert's deposition and the close of discovery. Theriot also failed to appeal the denial of her motion to compel or request a continuance of the discovery period or submission date of the Fund's motion in order to allow her additional time to obtain the 1990 collective bargaining agreement.

Although the Court recognizes that Theriot is still without the 1990 collective bargaining agreement, she had adequate opportunity to obtain the agreement during discovery and failed to do so. Consequently, the Court finds unavailing Theriot's argument that the Court should not have granted summary judgment before the Fund produced the 1990 collective bargaining agreement.

---

[33] *Id.* at 8; R. Doc. No. 18.
[34] R. Doc. No. 66.
[35] R. Doc. No. 76.

13

## C.

The Fund implores the Court to award it attorneys' fees in connection with opposing the instant motion because Theriot's arguments for reconsideration are frivolous.[36]

"Under ERISA, the district court 'in its discretion may allow a reasonable attorney's fee and costs of action to either party.'" *Cluck v. MetroCare Servs. - Austin, L.P.*, 785 F. App'x 244, 245 (5th Cir. 2019) (quoting 29 U.S.C. § 1132(g)(1)). "[T]he Supreme Court requires that a claimant 'show some degree of success on the merits before a court may award fees.'" *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 737 F. App'x 233, 233 (5th Cir. 2018) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010)) (internal quotations omitted).

Once a court determines that a party is eligible for a fee award, it may then examine the facts of the case to determine if a fee award is appropriate. "When determining whether to award attorneys['] fees under ERISA, the district court may consider:

> '(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.'"

*Victory Med. Ctr. Houston, Ltd. P'ship v. CareFirst of Maryland, Inc.*, 707 F. App'x 808, 810 (5th Cir. 2018) (quoting *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255,

---

[36] R. Doc. No. 121, at 16.

1266 (5th Cir. 1980)). These factors are discretionary, so district courts may make fee determinations without evaluating such considerations. *Id.* (citing *Hardt*, 560 U.S. at 256).

The Fund prevails on the merits of the instant motion for the reasons set forth herein and it is, therefore, eligible for an award of attorneys' fees. *N. Cypress Med. Ctr. Operating Co.*, 737 F. App'x at 233. However, the Court disagrees with the Fund's position that Theriot's arguments for reconsideration are so frivolous as to amount to bad faith.[37] Considering the lack of evidence of bad faith and the remaining *Bowen* factors, the Court declines to exercise its discretion to award the Fund attorneys' fees.

## IV.

Accordingly,

**IT IS ORDERED** that Theriot's motion for reconsideration is **DENIED**.

New Orleans, Louisiana, January 29, 2020.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

---

[37] *Id.* at 16–17.